IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LG ELECTRONICS, INC., | § | |
| | § | |
| Plaintiff Below, | § | No. 475, 2014 |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | Court Below: Court of |
| INTERDIGITAL | § | Chancery of the State of |
| COMMUNICATIONS, INC., | § | Delaware |
| INTERDIGITAL TECHNOLOGY | § | |
| CORP., and IPR LICENSING, INC., | § | C.A. No. 9747-VCL |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: March 11, 2015
Decided: April 14, 2015

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices; **CHAPMAN** and **NEWELL**, Judges;[*] constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **AFFIRMED**.

Jeremy D. Anderson, Esquire, Joseph B. Warden, Esquire, Fish & Richardson P.C., Wilmington, Delaware; Michael J. McKeon, Esquire (*argued*), Christian Chu, Esquire, Scott A. Elengold, Esquire, Fish & Richardson P.C., Washington, DC, for the Appellant.

Neal C. Belgam, Esquire, Kelly A. Green, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware; David S. Steuer, Esquire (*argued*), Michael B. Levin, Esquire, Matthew R. Reed, Esquire, Wilson Sonsini Goodrich & Rosati, P.C., Palo Alto, California, for the Appellees.

**STRINE**, Chief Justice, for the Majority:

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

# I.    INTRODUCTION

LG Electronics, Inc. ("LG") sought a declaration in the Court of Chancery that InterDigital Communications, Inc., InterDigital Technology Corporation, and IPR Licensing Inc. (collectively, "InterDigital") had breached a nondisclosure agreement between the parties by disclosing confidential information during a pending arbitration proceeding. In a precise, detailed opinion, the Court of Chancery granted InterDigital's motion to dismiss, holding that all of LG's claims were properly before the arbitral tribunal, and deferring to the first-filed proceeding based on the factors established by this Court in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*[1] We agree that the *McWane* doctrine applies in this case, and that it supports dismissing LG's claims.

This dispute arose from a contract signed by the parties in 2006, the Wireless Patent License Agreement (the "License Agreement"), which provides for arbitration as the mechanism to resolve any claims arising under that Agreement. In 2011, when the parties were engaged in judicial proceedings in multiple forums, including in an arbitration proceeding initiated by LG, LG and InterDigital entered into another contract that governed the circumstances under which certain "settlement communications" could be disclosed. That non-disclosure agreement ("NDA") contained a broad provision permitting both parties

---

[1] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135 (Del. Ch. 2014).

1

to enforce the agreement in "any court, agency, or *tribunal* having personal jurisdiction over the Party in alleged breach of this Agreement . . . ."[2]

After the parties executed the NDA, LG filed its opening brief with the three-member arbitration panel (the "Tribunal"), arguing that its claims should be decided without reference to certain evidence that it alleged was barred from use by the NDA. InterDigital contended in response that, in its view, the NDA did not prohibit the Tribunal from considering the contested evidence. LG disagreed, and further argued that despite having raised the subject of whether the NDA prevented the introduction of the evidence in the first place, the Tribunal had no authority to decide the matter. Opening yet another front, LG then filed suit in the Court of Chancery, seeking declaratory relief and an injunction to prevent InterDigital from using the evidence in the arbitration proceeding because that usage would supposedly violate the NDA.

The Court of Chancery, citing the long-standing principles of *McWane* and other relevant authority, declined to decide a question that was pending in the arbitration proceeding that LG had itself initiated and where it had first raised the issue. On appeal, LG argues that the Court of Chancery's ruling was in error, and contends that it is being forced to arbitrate an issue against its will because the License Agreement contained an arbitration clause, even though the NDA did not. But LG's arguments on appeal are confused. The Court of Chancery did not premise its ruling on the arbitration clause in the License Agreement. Rather, the

_____

[2] App. to Opening Br. at 30 (NDA ¶ 9) (emphasis added).

Court of Chancery relied on the plain terms of the NDA itself. Those terms give both parties the right to enforce the NDA not just in a court, but also before an "agency" or a "tribunal," two terms that LG concedes were likely intended to cover proceedings before a regulatory agency or, most relevant here, an arbitration panel. Consistent with what the Court of Chancery found, and LG does not contest, the term "tribunal" has long been understood to encompass arbitral tribunals, including the one deciding the underlying dispute over the License Agreement.[3]

Furthermore, the NDA does not give LG the right to proliferate forums and to have the Court of Chancery resolve an evidentiary issue that was already pending before a forum—the Tribunal—contemplated by the NDA itself, the forum in which LG first injected the NDA issue. In fact, because both parties have the right to enforce its terms in "any court, agency, or tribunal," InterDigital was entitled to seek a declaration for itself from the Tribunal that the NDA does not bar the use of evidence it wished to introduce in the arbitration proceeding. The Court of Chancery was thus within its discretion to hold that resolution of the dispute be confined to the first-filed action under the principles of *McWane*.

The Court of Chancery's decision was also consistent with well-reasoned precedent suggesting that courts should accord respect to arbitration proceedings by hesitating to inject themselves into the process. As in all forms of dispute resolution, evidentiary issues often arise in arbitration and must be decided as part

---

[3] *LG Elecs.*, 98 A.3d at 139.

3

of resolving the underlying dispute properly before the arbitrators. If courts interject themselves into every procedural dispute, the value of arbitration as an efficient dispute resolution mechanism will be compromised.

We therefore affirm the Court of Chancery's judgment dismissing the case.

## II.    BACKGROUND[4]

This case arises out of a complicated set of facts, involving multiple agreements, and multiple legal proceedings, between the parties. We will focus only on the background relevant to the issues before us in this appeal.

LG is a consumer electronics and telecommunications company based in Seoul, Korea. InterDigital, a Delaware corporation, develops technologies for use in digital cellular and wireless products and networks. In 2006, LG and InterDigital entered into the License Agreement, granting LG a license to certain InterDigital patents. The Agreement included a section permitting either party to submit any disputes "arising under this Agreement" to arbitration.[5] The Agreement incorporated the AAA International Rules,[6] which provide that the panel is empowered to rule on issues related to its own jurisdiction,[7] that issues of evidence are presumptively part of the arbitration panel's purview,[8] and that the tribunal is authorized to "determine the admissibility, relevance, materiality and

---

[4] The undisputed facts are drawn from the Court of Chancery's opinion and the record on appeal.
[5] App. to Opening Br. at 63 (License Agreement § 5.2).
[6] App. to Opening Br. at 63 (License Agreement § 5.2).
[7] App. to Answer Br. at 140 (International Dispute Resolution Procedures Article 15).
[8] App. to Answering Br. at 143 (International Dispute Resolution Procedures Article 19).

4

weight of the evidence offered by any party," taking into account the "applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client."[9] The AAA rules also provide that the panel can "take whatever interim measures it deems necessary, including injunctive relief."[10] The License Agreement further stipulated that the "Arbitration Panel shall have the exclusive authority to permit requests for the production of relevant documents, including confidential discovery to the extent required by a party in order to establish its case. . . . "[11]

In 2011, InterDigital filed a complaint with the United States International Trade Commission (ITC), an independent federal agency, against a number of defendants, alleging various claims of patent infringement. InterDigital eventually added LG as a defendant to those proceedings. LG moved to terminate the ITC investigation in favor of arbitration under the License Agreement. LG then commenced arbitration in the International Centre for Dispute Resolution. Eventually, after multiple rounds of appeals, InterDigital withdrew its ITC complaint against LG in favor of the then-pending arbitration.

Two months after LG commenced the arbitration, but before a panel was formed, LG and InterDigital entered into an Agreement Governing Confidential Settlement Communications, the "NDA" at issue in this appeal. The NDA, which stated that it was to be governed by Delaware law, restricted the parties' use of

---

[9] App. to Answer Br. at 144 (International Dispute Resolution Procedures Article 20).
[10] App. to Answer Br. at 144 (International Dispute Resolution Procedures Article 21).
[11] App. to Opening Br. at 64 (License Agreement § 5.2(e)).

specified "settlement communications" in "any existing or future legal, judicial, administrative or arbitration proceeding."[12] Unlike the License Agreement, the NDA did not contain a specific provision mandating arbitration. Indeed, it explicitly stipulated that "this Agreement does not contain or incorporate any formal dispute resolution procedure."[13] Nevertheless, the NDA provided that "any Party shall have the right, in addition to all other remedies at law or in equity, to have the provisions of this Agreement specially enforced by any court, agency, or tribunal having personal jurisdiction over the Party in alleged breach of this Agreement . . . ."[14]

On April 19, 2013, LG submitted its opening brief to the Tribunal. In its brief, LG emphasized that it was purposely withholding fact witness statements and supporting documents that it alleged were barred under the NDA. Two weeks later, InterDigital's counsel sent a letter to the Tribunal, disagreeing with LG's interpretation of the NDA and requesting an order confirming that InterDigital was permitted to submit witness testimony and supporting documents. The Tribunal issued an order declining InterDigital's request as "premature," holding that the issue of whether evidence was admissible under the NDA could be addressed when evidence was introduced that one party alleged should be precluded.[15]

---

[12] App. to Opening Br. at 27 (NDA ¶ 1).
[13] App. to Opening Br. at 30 (NDA ¶ 9).
[14] *Id.*
[15] App. to Opening Br. at 98 (Letter from the Hon. Benjamin J. Greenberg, May 8, 2013).

InterDigital then filed its response brief to the Tribunal, including evidence that LG contends breached the NDA. In that brief, InterDigital explained why it believed the evidence was admissible, in contrast to LG's claims. LG requested that InterDigital "cure its breach" by withdrawing the response brief and re-filing it without the alleged confidential communications.

When InterDigital did not respond, LG filed a verified complaint against InterDigital in the Court of Chancery, arguing that InterDigital had breached the NDA by including confidential communications in its response brief. LG requested a declaration that InterDigital was in breach of the NDA, and an injunction requiring InterDigital to withdraw its response brief from the arbitration proceeding and prohibiting InterDigital from "submitting, using, and relying on any Settlement Communications to the Arbitration Tribunal and any other improper use . . . ."[16] Although LG had first raised the issue in the arbitration proceedings, it asserted that the Tribunal could not properly decide issues of admissibility under the NDA because that agreement did not contain its own arbitration clause. InterDigital moved to dismiss LG's claims, arguing that under the *McWane* doctrine, the Court of Chancery should dismiss the case as involving evidentiary issues properly before the Tribunal in the ongoing arbitration.

In an opinion dated August 20, 2014, the Court of Chancery granted InterDigital's motion to dismiss. Applying the principles of *McWane*, the Court of Chancery found that the arbitration constituted a first-filed action, the Tribunal

---

[16] App. to Answering Br. at 24 (Verified Complaint).

could provide prompt and complete justice, and the arbitration involved the same parties and the same issues.[17]  Thus, the Court of Chancery determined that LG's claims should be resolved by the Tribunal to avoid duplication, inefficiency, and potentially inconsistent rulings, and dismissed the case.  LG appealed.

After LG filed its appeal and submitted its opening brief, the Tribunal issued an order finding that it had the authority to interpret the NDA to rule on the evidentiary issues presented by the parties that were relevant to determining the substantive claims before it.[18]  The Tribunal found that InterDigital's interpretation of the NDA was correct, and therefore permitted the contested evidence to be introduced in the proceeding.[19]

### III.  ANALYSIS

This Court held in *McWane* that:

> a Delaware action will not be stayed as a matter of right by reason of a prior action pending in another jurisdiction involving the same parties and the same issues; that such stay may be warranted, however, by facts and circumstances sufficient to move the discretion of the Court; that *such discretion should be exercised freely* in favor of the stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues; that, *as a general rule, litigation should be confined to the forum in which it is first commenced . . .*; that these concepts are impelled by considerations

---

[17] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 136 (Del. Ch. 2014).
[18] App. to Answering Br. at 257 (*LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, IDCR Case No. 50-20-1200-0226, Decision and Order Regarding "Agreement Governing Settlement Communications," Oct. 27, 2014).
[19] *Id*. at 258.

of comity and the necessities of an orderly and efficient administration of justice.[20]

Following that case, Delaware courts considering a motion to stay or dismiss in favor of a previously filed action have applied *McWane*'s three-factor test: (1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues? If all three criteria are met, "*McWane* and its progeny establish a strong preference for the litigation of a dispute in the forum in which the first action" was filed.[21] We review a trial court's stay or dismissal of a case under *McWane* for abuse of discretion,[22] but we review *de novo* any issues of law "applied in reaching that decision."[23]

## A. The Court of Chancery Correctly Determined that the Arbitration Proceeding Constituted a First-Filed Action for Purposes of *McWane*

As the Court of Chancery noted, this case appears to be the first in which Delaware courts have considered whether an arbitration proceeding constitutes a first-filed action for purposes of the *McWane* doctrine.[24] LG contended before the Court of Chancery and again on appeal that the absence of relevant precedent suggests that *McWane* does not apply to arbitration proceedings.

---

[20] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970) (emphasis added).

[21] DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 5.01, at 5-3 (2013).

[22] *See, e.g.*, *Lisa, S.A. v. Mayorga*, 993 A.2d 1042, 1047 (Del. 2010).

[23] *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010).

[24] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 138 (Del. Ch. 2014).

We agree with the Court of Chancery that there is no principled reason to distinguish an arbitration proceeding from other first-filed actions. First, as the Court of Chancery observed, arbitrations are typically treated as "prior actions" for other purposes, including issue and claim preclusion.[25] Moreover, the principles underlying *McWane* apply equally when the first-filed action is an arbitration: the desire to avoid the "wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts," and "the possibility of inconsistent and conflicting rulings and judgments and an unseemly race by each party to trial and judgment in the forum of its choice."[26]

Those factors remain relevant in a case like this one, in which the only relief that LG seeks is a declaration that evidence is not admissible in the first-filed action. The parties and the Tribunal have all expended considerable "time, effort, and expense" in arguing over the admissibility of evidence under the NDA, in the specific context in which InterDigital's alleged breach occurred and for which LG seeks equitable relief. In light of Delaware's public policy favoring arbitration,[27]

---

[25] *Id*; *cf. Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, 2013 WL 4509652, at *10 (Del. Ch. Aug. 12, 2013) (noting that the "the first-filed status" of an arbitration proceeding "conceivably could play a role in the Court's decision" to dismiss pending claims in favor of arbitration).

[26] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).

[27] *See, e.g.*, *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999) ("Our conclusion is bolstered by the fact that Delaware recognizes a strong public policy in favor of arbitration. Normally, doubts on the issue of whether a particular issue is arbitrable will be resolved in favor of arbitration."); *SOC-SMG, Inc. v. Day & Zimmermann, Inc.*, 2010 WL 3634204, at *3 (Del. Ch. Sept. 15, 2010) ("To have a

10

Delaware courts should be as reluctant to interfere in a dispute already before an arbitral panel as they would be to interfere in a dispute already before another court.[28] When that dispute is about an issue incidental to the first-filed proceeding, *e.g.*, the admissibility of evidence, considerations of "comity and . . . the orderly and efficient administration of justice" are even more compelling.[29] Accordingly, we find that the parties' arbitration proceeding constitutes a first-filed action for purposes of the *McWane* analysis.

**B.     The Court of Chancery Correctly Concluded that the Arbitration Tribunal is Capable of Doing Prompt and Complete Justice**

The Court of Chancery determined that the Tribunal was "capable of doing prompt and complete justice" under the second prong of the *McWane* analysis because the Tribunal is empowered to decide the dispute and can provide appropriate relief. LG argues that both findings were in error.

*1.     The Arbitration Tribunal is Empowered to Decide Issues Incidental to a Dispute Properly Before It*

For much of its brief, LG focuses on arguing an issue of its own contrivance, which played no role in the Court of Chancery's ruling.[30] LG claims

---

Delaware court inject itself into this situation would show disrespect toward the Arbitration panel, which has the broad authority to address these issues in the first instance, and would be contrary to our state's—and our nation's—strong public policy favoring arbitration.").

[28] *See generally McWane*, 263 A.2d 282-83.

[29] *Id*. at 282.

[30] LG argued to the Court of Chancery that the NDA's reference to a "tribunal" did not necessarily mean the Tribunal which had been formed to consider its claims under the License Agreement, and that the Tribunal could not grant LG's requested relief as a matter of equitable rather than legal relief. In an argument not advanced on appeal, LG claimed that because the License Agreement used the phrase "arbitrators at law," the

11

that the Court of Chancery is forcing LG to arbitrate a subject that is not arbitrable because the NDA, unlike the License Agreement, does not contain an arbitration clause. This framing of the Court of Chancery's ruling misunderstands the careful reasoning supporting the court's decision to dismiss LG's claims in favor of the arbitration proceeding, and ignores what the NDA itself says.

It is true that the NDA does not contain a clause requiring that any dispute regarding its enforcement or applicability be resolved in arbitration, as the Court of Chancery recognized.[31] But the NDA also does not provide LG the right to bring any dispute before a court at any time, regardless of the effect such an action would have on the resources of LG's contractual partner, InterDigital, the judiciary, or an arbitration tribunal. By its plain terms, the NDA can be enforced not just in any "court," but also in any "agency" or "tribunal." It is on this provision of the NDA that the Court of Chancery properly focused.

Two independent reasons support the Court of Chancery's determination that this dispute can be decided by the Tribunal. First, the terms of the NDA itself clarify that the parties intended for a "tribunal" to have the authority to enforce the agreement. As LG conceded at oral argument, the NDA was a bilateral

_____

Tribunal could not provide the equitable relief LG sought. In a thorough exegesis of the historical distinction between law and equity, the Court of Chancery persuasively explained why the Tribunal did have the authority to provide equitable relief. *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 140-45 (Del. Ch. 2014). In light of that well-reasoned judgment, LG did not reiterate its argument on appeal. In fact, as noted, the AAA rules that the parties agreed to in the License Agreement explicitly empower the Tribunal to provide equitable relief. *See* App. to Answer Br. at 144 (International Dispute Resolution Procedures Article 21).

[31] *See LG Elecs.*, 98 A.3d at 139.

agreement,[32] and it specifically permitted both parties to seek relief from "any court, agency, or tribunal."[33] As LG also conceded, the NDA's reference to a "tribunal" as one of the three forums in which either party can seek "special[] enforce[ment]" was most likely to ensure that the NDA's terms could be interpreted and enforced by an arbitral tribunal, including the one that LG sought to form two months before it signed the NDA.[34] As discussed, the parties were engaged in multiple disputes when they signed the NDA, including before the U.S. District Court for the District of Delaware ("court"),[35] the ITC ("agency"), and the arbitration Tribunal ("tribunal"). The parties thus likely intended for the NDA to cover evidentiary matters in all of the legal proceedings in which they were enmeshed. In other words, because LG had already initiated the arbitration when the NDA was signed, these sophisticated parties could have easily excluded an arbitral tribunal as an enforcement option. Instead, the NDA's broad language expressly included a "tribunal" as one of the proper forums for enforcement.

Moreover, LG was the first party to put the NDA at issue in the arbitration, by contending in its opening brief to the Tribunal that the agreement barred the introduction of certain evidence. The Tribunal determined in its ruling on the NDA that LG's brief equated to "request[ing] that the NDA be 'specially

---

[32] Videotape: Oral Argument Before the Delaware Supreme Court, at 32:21 (*LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, No. 475, 2014, Mar. 11, 2015).
[33] App. to Opening Br. at 30 (NDA ¶ 9).
[34] Videotape: Oral Argument Before the Delaware Supreme Court, at 35:20 (*LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, No. 475, 2014, Mar. 11, 2015).
[35] *InterDigital Commc'ns v. Huawei Techs. Co.*, C.A. No. 11-654-MSG (D. Del).

enforced' by the Arbitral Tribunal."[36]  But even if LG's attempt to raise the issue before the Tribunal did not constitute an official request to have the Tribunal decide the issue, InterDigital's later response to the Tribunal did constitute such a request for relief.

LG only initiated suit in Delaware after InterDigital had requested such relief before the Tribunal, and after the Tribunal declined to rule immediately that the NDA did not bar certain evidence under LG's preferred interpretation. Notably, LG's action in the Court of Chancery sought declaratory, not just injunctive, relief about the applicability of the NDA, just as InterDigital had earlier requested of the Tribunal.  In other words, LG wanted to have it both ways: by first raising the issue in its opening brief in the arbitration proceeding, LG sought to bind InterDigital's hands in introducing relevant evidence in the arbitration panel, but also prevent the Tribunal from ruling on the issue of whether InterDigital could do so.[37]

What LG seems to ignore is that InterDigital had its own right to seek relief under the contract.  Just as LG was entitled to ask a court to enforce the specific terms of the NDA by way of injunctive or declaratory relief, so too was InterDigital entitled to seek a declaration that the NDA did not bar the use of certain evidence in the context of a concrete evidentiary dispute arising in the

---

[36] App. to Answering Br. at 259 (*LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, IDCR Case No. 50-20-1200-0226, Decision and Order Regarding "Agreement Governing Settlement Communications," Oct. 27, 2014).

[37] *See* App. to Opening Br. at 146 (Answering Brief in Opposition to Defendants' Motion to Dismiss).

arbitration proceeding.[38]  Nor was this right to declaratory relief limited to the non-breaching party.  The most logical reading of the phrase "any party shall have the right, in addition to all other remedies at law or in equity, to have the provisions of this Agreement specially enforced by any court, agency or tribunal having personal jurisdiction over the Party in alleged breach . . ." is in accordance with its plain terms.  That is, either party to the contract had the right to avail itself of any "remedies at law or in equity," including the right to seek declaratory relief, as LG itself recognized when it sought a declaratory judgment from the Court of Chancery.  Moreover, under Delaware law, which indisputably covered the NDA, either party to a contract can seek declaratory relief.[39]  Because the NDA specifically included a "tribunal" as one of the forums in which both parties could seek relief, InterDigital was entitled by the terms of the NDA itself to keep the related litigation in one forum, the one chosen by LG.  Thus, when LG tried to prevent InterDigital from introducing the contested evidence, InterDigital properly brought the issue up to the Tribunal, which properly decided the issue, because it was vested with the authority to determine incidental evidentiary issues.

As the Court of Chancery determined, the NDA does not "entitle[] LG to insist on a judicial forum."[40]  Had the parties wanted to limit the authority of the Tribunal to determine evidentiary matters, thereby limiting the power granted in the License Agreement itself, they could have done so in the NDA.  It is not

---

[38] App. to Opening Br. at 30 (NDA ¶ 9).
[39] *See* 10 *Del. C.* § 6501.
[40] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 139 (Del. Ch. 2014).

uncommon for sophisticated parties to name an exclusive forum in which to bring disputes that arise under an agreement;[41] indeed, the parties to this case did so in their License Agreement.[42]  But these same parties specifically declined to confine litigation to an exclusive forum in the NDA, and instead used a broad phrase enabling "any court, agency, or tribunal" to enforce the agreement.[43]  Because the parties did not include a clause limiting litigation to the courts or any particular court in the NDA, we agree with the Court of Chancery that this dispute was properly subject to arbitration, and that the Tribunal was a "tribunal" within the meaning of the NDA.  LG was thus not "forced to arbitrate the merits of a dispute" against its will; it got exactly what it bargained for in Paragraph 9 of the NDA.[44]

Secondly, the broad right to have the NDA enforced by any "tribunal" is consistent with the accepted principle that arbitrators can decide evidentiary issues relevant to disputes pending before them.[45]  This Court has never held that parties

[41] *See generally* 7 WILLISTON ON CONTRACTS § 15:15 (4th ed. 2014).
[42] App. to Opening Br. at 63 (License Agreement § 5.2).
[43] App. to Opening Br. at 30 (NDA ¶ 9).
[44] *Cf. CA, Inc. v. Ingres Corp.*, 2009 WL 4575009, at *47 (Del. Ch. Dec. 7, 2009) *aff'd*, 8 A.3d 1143 (Del. 2010) ("The 2007 Reseller Agreement is a contract with dignity, but it remains just one of several contracts that govern the ongoing relationship between CA and Ingres.  Traditionally, courts try to give a consistent reading to interrelated agreements.  Such consistency is especially warranted here because of the complex relationship between CA and Ingres.  Indeed, it is because of this complexity that the parties inserted broad choice of forum provisions in the Legacy Support Agreement and the CA Support Agreement in an effort to prevent the kind of claim splitting and piecemeal litigation that Ingres' California Action threatens.").
[45] 2 DOMKE ON COM. ARB. § 29:9 (2014) ("Arbitrators have discretionary power to admit and hear any evidence that the parties may wish to present through witnesses or documents.  Arbitrators are not constrained by formal rules of evidence or procedure.  Rather, they enjoy wide latitude in the conduct of proceedings.  Moreover, they are the final judges of such matters as the admissibility and relevance of evidence.  Rulings of

16

must enumerate each and every matter to be addressed by an arbitrator; rather, consistent with the policy across state and federal courts,[46] this Court has held that the arbitrator's power to resolve a dispute necessarily includes the power to resolve procedural issues relevant to that dispute.[47]  When a party clearly expresses the intent to arbitrate—as LG did by agreeing to arbitrate disputes arising under the License Agreement and by initiating the arbitration in the first place—it cannot then insist that every incidental question be resolved by the courts.[48]  That is especially true when the parties have explicitly agreed that the arbitrator has the power to decide those issues, as the parties did here by

---

arbitrators on the admissibility of evidence are not subject to review by courts since such action would 'result on in waste of time, the interruption of the arbitration proceeding, and encourage delaying tactics.").

[46] *See* 21 WILLISTON ON CONTRACTS § 57:99 (4th ed. 2014) ("Since arbitrators have the power to manage and conduct the arbitration hearing, they have wide latitude . . . to determine what evidence should be considered, and to determine the admissibility, relevance, materiality and weight of any evidence.  Arbitrators . . . are in a better position to determine the relevancy and materiality of evidence to the controversy. . . .  [I]t should not be a function of a court to hold itself open as an appellate tribunal to rule upon any question of evidence that may arise in the course of arbitration. . . ."); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) ("Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985) ("The arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding.").

[47] *See, e.g.*, *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 762 (Del. 1998); *see also Mehiel v. Solo Cup Co.*, 2005 WL 1252348, at *6 (Del. Ch. May 13, 2005) ("In the face of an unambiguous intent to arbitrate this dispute, I must conclude that the parties' contentions concerning discovery do not raise questions of 'substantive arbitrability.'  Thus, the scope of the arbitrator's authority to compel discovery is a procedural question and one that must be addressed by the arbitrator, who will determine, based upon the language of the contract, and the procedures the parties submit to, what that authority is.").

[48] *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

incorporating the AAA International Rules, which provide that the arbitration panel can decide issues of evidence and determine the limits of its own jurisdiction,[49] and by stipulating that the arbitrator "shall have the exclusive authority" over discovery in the License Agreement.[50]

But even if parties do not specifically provide that the arbitrator has the power to decide procedural questions, it is implicit in the Tribunal's power to decide a dispute that it can decide the evidentiary questions that inevitably arise.[51] As the Court of Chancery aptly noted, "[a]llowing parties to seek judicial review every time an arbitrator rules on . . . a procedural issue would frustrate the arbitral process.  If the Tribunal errs, LG can seek judicial review after the award becomes final."[52]

The Seventh Circuit's reasoning in *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, in which the appeals court overturned a district court judgment that

---

[49] App. to Answer Br. at 140-44 (International Dispute Resolution Procedures Articles 15, 19 and 20).  The AAA Rules are consistent with those of other international arbitration bodies as well.  *See* Konstantin Pilkov, *Evidence in International Arbitration: Criteria for Admission*, http://arbitration-blog.eu/evidence-international-arbitration-criteria-admission/ (last visited March 24, 2015) (citing various arbitration rules in support of the proposition that they typically "give broad authority to arbitrators regarding the consideration of evidence").

[50] *See* App. to Opening Br. at 63 (License Agreement § 5.2).

[51] *See* 6 C.J.S. *Arbitration* § 161 (2015) ("A general submission of all matters and differences between the parties gives the arbitrators the power to award or decide not only with respect to all matters of account, claims, debts, or demands which the parties may have against each other, but also all matters connected therewith or incidental thereto.").

[52] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 140 (Del. Ch. 2014).

18

an arbitrator did not have the power to construe a confidentiality agreement, is instructive.[53] The Seventh Circuit explained:

> The district judge also erred in concluding that the arbitrators are powerless to construe the confidentiality agreement. True, that agreement lacks its own arbitration clause, but the parties did agree to arbitrate their disputes about reinsurance. *Arbitrators who have been appointed to resolve a commercial dispute are entitled to resolve ancillary questions that affect their task.* What's more, the confidentiality agreement—a standard form in insurance arbitration, signed while the arbitration was under way—is *closely related to the substance of the first arbitration* and *presumptively within the scope of the reinsurance contracts' comprehensive arbitration clauses*, which cover all disputes arising out of the original dispute.[54]

Just as in that case, the Tribunal here was authorized to resolve the ancillary question of the admissibility of evidence in the proceeding before it based on the plain language of the License Agreement. And just as the Tribunal could determine that otherwise relevant evidence was inadmissible on the grounds of attorney-client privilege, for example,[55] so too was it empowered to bar evidence precluded from use by the NDA.[56] The breadth of the arbitration clause in the

---

[53] *Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869 (7th Cir. 2011).

[54] *Id*. at 874 (internal citations omitted) (emphasis added).

[55] *See* 21 WILLISTON ON CONTRACTS § 57:97 (4th ed. 2014) ("Arbitration rules often provide that the arbitrator shall take into account applicable principles of legal privilege, including those involving the confidentiality of communications between a lawyer and client. An arbitrator may order the redaction of information allegedly protected by the attorney-client privilege.").

[56] *Cf. SOC-SMG, Inc. v. Day & Zimmermann, Inc.*, 2010 WL 3634204, at *2 (Del. Ch. Sept. 15, 2010) ("Any member of this court knows that the adjudication of disputes, and the discovery issues necessarily related to them, often involves the resolution of questions about the use of privileged information and of issues of attorney responsibility. For that reason, it is not surprising that arbitrators have ruled on disqualification and privilege motions and that courts have refused to intervene on an interlocutory basis to either first- or second-guess those rulings. Rather, the interests of justice are served by charging the

License Agreement in this case, compared to the arbitration clause in the contracts at issue in *Trustmark*, does not require a different outcome: both of the respective contracts provided for arbitration using the AAA rules, and both entitle the arbitral tribunal to "decide for themselves those procedural questions that arise on the way to a final disposition."[57]

Nor is there any conflict between the reality that the NDA by itself vested the Tribunal with the authority to resolve the parties' dispute and the fact that the scope of the Tribunal's powers is detailed in the separate License Agreement. InterDigital does not contend that, absent the arbitration clause in License Agreement, the parties would have to arbitrate any related dispute. But the issue raised by the alleged violation of the NDA is a matter of the admissibility of evidence in the arbitration proceeding, which is ultimately about the License Agreement. The parties are bound by both agreements, and by the plain terms of both, this dispute is properly before the Tribunal.

---

arbitrators with deciding the overall matter, including allegations of discovery abuse and disqualification motions, in the first instance."); *see also Trustmark Ins. Co.*, 631 F.3d at 874 (observing that if "one or both of the contestants can get immediate review in a federal district court" of every procedural ruling, it "would be the end of arbitration as a speedy and (relatively) low-cost alternative to litigation.").

[57] *Trustmark Ins. Co.*, 631 F.3d at 874. As in *Trustmark*, the parties' arbitration clause in the License Agreement provided broadly that any dispute "arising under" the Agreement would be subject to arbitration. *See, e.g.*, *Orix LF, LP v. Inscap Asset Mgmt., LLC*, 2010 WL 1463404, at *1 (Del. Ch. Apr. 13, 2010); *CAPROC Manager, Inc. v. Policemen's & Firemen's Ret. Sys. of City of Pontiac*, 2005 WL 937613, at *2 (Del. Ch. Apr. 18, 2005); *Andarko Petroleum Corp. v. Panhandle Eastern Corp.*, 1987 WL 16508, at *2-3 (Del. Ch. Sept. 8, 1987). Moreover, for purposes of the precise question before us—whether the Tribunal is empowered to decide an issue of the admissibility of evidence relevant to the dispute before it—the License Agreement provides the answer, regardless of the precise scope of the arbitration clause.

### 2.    *The Tribunal Can Provide Appropriate Relief*

LG next argues that the Tribunal cannot provide appropriate relief. But the only relief LG sought in the Court of Chancery was relevant to the ongoing arbitration, *i.e.*, enjoining InterDigital from using the alleged confidential communications as evidence in that proceeding. Although the Tribunal ultimately determined that LG's claims were without merit, if it had ruled in LG's favor and excluded the contested evidence, the case before the Court of Chancery would have become moot.

LG also contends that it sought relief against hypothetical future breaches of the NDA, which cannot be addressed by the Tribunal. But those claims are not yet ripe. As the Court of Chancery found, LG has not established that InterDigital engaged in a "pattern of conduct" that suggests InterDigital will again "breach" the NDA outside of the arbitration proceeding.[58] The only claim of breach that LG alleged before the Court of Chancery arose from InterDigital's response brief in the arbitration, which the Tribunal was capable of addressing.[59]

---

[58] *LG Elecs.*, 98 A.3d at 145.

[59] In addition to the reasons cited by the Court of Chancery, we note that an additional factor supports its decision that this case should be dismissed: the Court of Chancery, as a court of equity, does not have jurisdiction to hear an issue when the claimant has an adequate remedy at law. *See, e.g.*, *El Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*, 669 A.2d 36 (Del. 1995); *Yuen v. Gemstar-TV Guide Int'l, Inc.*, 2004 WL 1517133, at *2 (Del. Ch. June 30, 2004) ("The court 'will not 'accept jurisdiction over' claims that are properly committed to arbitration since in such circumstances arbitration is an adequate legal remedy.' This comports with Delaware's strong public policy favoring arbitration and Delaware courts will interpret contracts as requiring arbitration if they can reasonably do so."). Here, the only claim ripe for injunctive relief or specific performance could have been—and ultimately was—decided by the Tribunal. If LG

21

Because we agree with the Court of Chancery that the dispute is arbitrable, and the Tribunal is capable of providing appropriate relief, we find that the second prong of the *McWane* test was met.

### C. The Court of Chancery Correctly Concluded that the Arbitration Involves the Same Issues

Finally, LG argues on appeal that the issues involved in the arbitration are not "substantially or functionally identical" to those at issue in the Delaware proceeding. This claim is without merit. The relief that LG seeks is to have evidence excluded from the ongoing arbitration proceeding because it alleges that the NDA prohibits the use of that evidence. The Tribunal can—and eventually did—determine whether the contested evidence is admissible, based on the parties' agreement to have an arbitrator decide evidentiary issues relevant to disputes arising under the License Agreement.[60]

### D. The *McWane* Factors Support Dismissing this Case

Because we agree with the Court of Chancery that the arbitration constitutes a "prior action," the Tribunal is capable of doing prompt and complete justice, and the arbitration involves the same parties and the same issues, we agree that *McWane* applies, and thus the Court of Chancery's decision to dismiss this case in favor of the first-filed proceeding. We therefore find that the Court of Chancery did not abuse its discretion.

---

wishes to seek monetary damages for InterDigital's alleged breach after the Tribunal renders its final verdict, it can do so in an appropriate court of law.
[60] App. to Opening Br. at 64 (License Agreement § 5.2(e)).

For the foregoing reasons, the judgment of the Court of Chancery is hereby

AFFIRMED.

**VALIHURA**, Justice, dissenting:

I disagree with the Court of Chancery and the Majority, and, therefore, I respectfully dissent. Before addressing the points of divergence, I state my agreement with the Majority on several basic points.

First, the Court of Chancery and the Majority appropriately reiterate the concerns expressed in various cases that, *as a general matter*, courts should accord respect to arbitration proceedings by "hesitating to inject themselves into the process."[61] The Majority correctly notes that if courts were to interject themselves into every procedural dispute, the value of arbitration as an efficient dispute resolution mechanism would be compromised.

Second, *as a general matter*, arbitrators are typically vested with the power to decide evidentiary and discovery issues relevant to the disputes pending before them. I agree that this general view is consistent across state and federal courts.

However, I disagree with the Majority's conclusion that the underlying dispute arising under the NDA (the "Dispute") is arbitrable and that an analysis under the doctrine set forth in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*[62] was appropriate. The Majority ignores several cases that require a contract to reflect clearly the parties' intention to require a matter to be arbitrated before a party can be compelled to arbitrate. Instead, the Majority

---

[61] Majority Op. at 3.
[62] 263 A.2d 281 (Del. 1970).

1

contends that two independent reasons support the Court of Chancery's determination that the arbitration tribunal (the "Tribunal") should adjudicate the Dispute. First, the Majority holds that "the terms of the NDA itself clarify that the parties intended for a 'tribunal' to have authority to enforce the agreement."[63] Second, the Majority contends that "the broad right to have the NDA enforced by any 'tribunal' is consistent with the accepted principle that arbitrators can decide evidentiary issues relevant to disputes pending before them."[64] Under the unique circumstances presented here, I disagree with both prongs of the Majority's reasoning.

### A Party May Only Be Compelled to Arbitrate a Dispute When a Contract Contains a Clear Intention to Arbitrate the Claim

Well-settled law requires a contract to reflect clearly the parties' intention to require a matter to be arbitrated before a party can be compelled to arbitrate. The United States Supreme Court has explained that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."[65] "This axiom recognizes the fact that arbitrators derive their

---

[63] Majority Op. at 12.
[64] *Id.* at 16.
[65] *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (1986) (internal quotation omitted); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("This Court has determined that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960))).

authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."[66]

Citing to another United States Supreme Court case, *First Options of Chicago, Inc. v. Kaplan,*[67] this Court, in *DMS Props.-First, Inc. v. P.W. Scott Assocs., Inc.,*[68] reiterated this well-settled principle:

> [T]he United States Supreme Court held that courts should not presume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so." Thus, the legal presumptions are reversed when there is silence or ambiguity about who should decide arbitrability *vis-à-vis* when there is silence or ambiguity about the question of whether a particular merits-related dispute is within the scope of a valid arbitration agreement.[69]

One respected treatise summarizes the importance of looking to the contractual language to determine whether a claim is arbitrable:

> The decision to submit a dispute to arbitration must be contracted for expressly by the parties to the agreement. The range of issues to be arbitrated is restricted by the terms of the agreement. Despite a strong public policy favoring the submission of disputes to arbitration, courts are not allowed to do violence to the expressed intention of the parties or to ignore the fundamental rule that an agreement to submit a dispute to arbitration is contractual in nature. *The agreement to arbitrate must be clearly intended by the parties*. In other words, a party cannot be compelled to arbitrate a particular dispute unless the agreement expressly encompasses the subject matter of the dispute.[70]

---

[66] *AT&T Techs., Inc.*, 475 U.S. at 648 (citing *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374 (1974)).

[67] 514 U.S. 938, 943 (1995).

[68] 748 A.2d 389 (Del. 2000).

[69] *Id.* at 392.

[70] *Fletcher Cyclopedia of the Law of Corporations*, 9A Fletcher Cyc. Corp. § 4724.10 (emphasis added) (internal citations omitted).

The overarching principle is that arbitration is a matter of contract. Without a clearly evidenced intention to arbitrate the Dispute, LG cannot be compelled to arbitrate the Dispute. While the Majority ignores this well-established line of authority, the Court of Chancery acknowledged it, including our decision in *DMS*. But the Court of Chancery erred by holding that "[t]he NDA is . . . not dispositive," and that "[i]t neither empowers InterDigital nor entitles LG to insist on a judicial forum."[71] Here, the absence of a clear intent to arbitrate the Dispute *is* dispositive.

> ***Despite Complete Unanimity on the Point That There Is No Clear Expression of Intent to Arbitrate the Dispute, the Majority and the Court of Chancery Erroneously Require Arbitration***

One fact agreed upon by all who have examined this matter is the following: the NDA does not contain a clear expression of intent to arbitrate disputes arising under it. The Court of Chancery acknowledged this undisputed critical fact in stating that: "LG is correct that the language is not sufficiently clear to constitute an agreement to arbitrate the dispute."[72] The Majority also acknowledges this point: "It is true that the NDA does not contain a clause requiring that any dispute

---

[71] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 139 (Del. Ch. 2014).
[72] *LG Elecs., Inc.*, 98 A.3d at 139 (citing *DMS Props.-First, Inc.*, 748 A.2d at 391 ("A party cannot be forced to arbitrate the merits of a dispute . . . in the absence of a clear expression of such intent in a valid agreement.")).

4

regarding its enforcement or applicability be resolved in arbitration, as the Court of Chancery recognized."[73]

It must follow that LG cannot be forced to arbitrate the Dispute, which all agree arises under the NDA. Without a clear expression of intent to arbitrate an issue, "a party . . . has a right to have the merits of [a] dispute adjudicated *ab initio* in a court of competent jurisdiction."[74]

The Majority focuses on paragraph 9 of the NDA and erroneously concludes that in it LG expressly agreed to arbitrate the Dispute. The Majority states:

> By its plain terms, the NDA can be enforced not just in any "court," but also in any "agency" or "tribunal." It is on this provision of the NDA that the Court of Chancery properly focused.[75]

The Majority's reliance on the word "tribunal" in the NDA misses the mark because the use of the word "tribunal" does not require arbitration. The issue here is whether arbitration is *required* -- not whether it is *foreclosed*. Whether LG could agree to arbitrate a claim arising under the NDA is irrelevant since LG has

---

[73] Majority Op. at 12.

[74] *DMS Props.-First, Inc.*, 748 A.2d at 391. The Court of Chancery's decision in *Medicis Pharm. Corp. v. Anacor Pharms., Inc.*, 2013 WL 4509652 (Del. Ch. Aug. 12, 2013), supports the proposition that substantive arbitrability is a threshold question that must be addressed before any comity analysis can begin. There, the parties were in an arbitration proceeding (that was filed first) involving a license agreement, when one party filed suit in the Court of Chancery seeking specific performance of the same agreement. While the first-filed arbitration involved the same parties and the same substantive issues, the Court of Chancery refused to dismiss the case, finding that the equitable claim fell outside the bounds of the arbitration clause in the license agreement. The agreement in *Medicis* allowed for arbitration of certain disputes, but provided that each party would have the right to institute judicial proceedings in order to enforce the instituting party's rights through specific performance, injunction or other similar equitable relief.

[75] Majority Op. at 12.

sought relief under the NDA against the allegedly breaching party (InterDigital) in a judicial forum.

Critical to the Majority's holding that the Dispute is arbitrable is its conclusion that "the NDA was a bilateral agreement, and it specifically permitted both parties to seek relief from 'any court, agency, or tribunal.'"[76]  The Majority offers three bases to support its conclusion -- the language of the NDA itself (specifically, paragraph 9); the suggestion that LG agreed to arbitration by asking the Tribunal to resolve the Dispute; and finally, LG's "concession" at oral argument that the NDA is "bilateral."  However, each premise the Majority relies upon is refuted by either the language of the NDA or the factual record presented to us on appeal.

### Under Paragraph 9 of the NDA, an Allegedly Breaching Party Cannot Compel the Non-Breaching Party to Arbitrate a Dispute

The Majority avoids the well-established "clear intent" rule as set forth above by misconstruing the language of the NDA.  Paragraph 9 of the NDA states in relevant part:

> Although this Agreement does not contain or incorporate any formal dispute resolution procedure, any party shall have the right, in addition to all other remedies at law or in equity, to have the provisions of this Agreement specifically enforced by any court, agency, or tribunal having personal jurisdiction over the Party in alleged breach of this Agreement and to seek a temporary or permanent injunction or order prohibiting the allegedly breaching

---

[76] *Id.* at 12-13 (citing App. to Opening Br. at A30, NDA ¶ 9).

Party (including the agents, officers, directors, employees, and attorneys as the case may be) from such unauthorized use or disclosure of any Settlement Communications or Confidential Information.[77]

In providing that the NDA "does not contain or incorporate any formal dispute resolution procedure," the parties obviously decided not to include in the NDA a provision *requiring* arbitration of disputes arising under the NDA.[78] The Majority agrees that "[u]nlike the License Agreement, the NDA [does] not contain a specific provision mandating arbitration."[79]

The NDA is not "bilateral" in the sense that the Majority contends, namely, that the *allegedly breaching party* (*e.g.*, the party accused of misuse of the confidential information) can compel the non-breaching party to arbitrate. Rather, a party has the right, under paragraph 9 of the NDA, to seek an order from a court prohibiting the *allegedly breaching Party* from unauthorized use or disclosure of

---

[77] App. to Opening Br. at A30, NDA ¶ 9.

[78] Counsel for InterDigital appeared to agree in the proceedings below that the NDA does not require arbitration:

> There is no threshold arbitrability issue here. We have not contended that the NDA has a mandatory arbitration clause. We don't make that argument. All we've argued is that the arbitration tribunal is not prohibited by the absence of an arbitration clause from considering whether the NDA prevents introduction of evidence before it.

App. to Opening Br. at A239. Instead, counsel for InterDigital urged the Court of Chancery to follow the United States Court of Appeals for the Seventh Circuit's decision in *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 631 F.3d 869 (7th Cir. 2011), and to allow the arbitrator to construe the NDA to make evidentiary determinations. App. to Opening Br. at A240-42.

[79] Majority Op. at 6.

Settlement Communications.[80]  Thus, the most faithful reading of paragraph 9 of the NDA under our case law is that the non-breaching party can invoke its contractual right to a judicial forum if it chooses, and neither party can compel arbitration.  LG consistently took this position in its briefing and argument before this Court.[81]

> ***Both the Court of Chancery and the Majority Erroneously Conclude That LG Agreed or Conceded That the Tribunal Had the Power to Determine Whether the Dispute Was Arbitrable.***

The Majority also avoids the well-established "clear intent" rule by finding that the parties agreed to submit the Dispute to arbitration.  Yet the record simply does not support this conclusion.

In its April 19, 2013 opening brief to the Tribunal, LG stated that it "chose not to present with this opening brief any witness statement related to negotiations

---

[80] *See* App. to Opening Br. at A30, NDA ¶ 9.  For example, at argument, counsel for LG stated: "We both have rights under the confidentiality agreement.  But it's not bilateral in the sense that if we invoke our right to go to a district court or a court that has jurisdiction, that they can raise it elsewhere."  Transcript of Oral Argument at 38, *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, No. 475, 2014 (Del. Mar. 11, 2015).

[81] The Majority ignores LG's claim for injunctive relief in pressing its strained interpretation of paragraph 9 of the NDA.  It first states that LG sought "only" declaratory relief.  Majority Op. at 10.  This is incorrect as the trial court's rulings acknowledge, *see* App. to Opening Br. at A268; *LG Elecs., Inc.*, 98 A.3d at 136, and as the face of LG's verified complaint reveals.  *See* App. to Opening Br. at A14, A23-25.  Then, focusing on a portion of paragraph 9 of the NDA, the Majority argues that the right to declaratory relief was not limited to the non-breaching party.  However, paragraph 9, in providing that "any party shall have the right . . . to have the provisions of this Agreement specifically enforced by any court, agency, or tribunal having personal jurisdiction over the Party in alleged breach of this Agreement and to seek a temporary or permanent injunction or order prohibiting the allegedly breaching Party . . . from such unauthorized use," necessarily means that the *non-breaching party* has the right to seek injunctive relief in a court against the *allegedly breaching party* -- as LG did here.

8

leading to the execution of the present Agreement or subsequent to its execution" because of the NDA the parties signed on May 9, 2012.[82] As of April 19, 2013, the record does not indicate that InterDigital had a different interpretation of the NDA. InterDigital then wrote to LG on April 25, 2013, arguing that the NDA did not preclude the submission of the communications at issue. On May 1, 2013, after LG advised the Tribunal that it would not be relying on Settlement Communications covered by the NDA, InterDigital requested the Tribunal to rule on the issue.[83]

In its May 3, 2013 letter to the Tribunal, LG responded and expressly stated that the Tribunal should *not* interject itself in resolving the Dispute. Specifically, LG stated:

> InterDigital gives no basis for its request that the Tribunal issue "an order confirming that InterDigital is permitted to submit witness testimony and documents as evidence of the parties' understanding of the proper interpretation of the PLA." . . . *In essence, InterDigital is asking the Tribunal to assert jurisdiction over an apparent dispute related to the NDA, to interpret the NDA, and to grant InterDigital leave to breach the NDA. But InterDigital fails to acknowledge that the NDA does **not** contain an arbitration clause.*[84]

---

[82] App. to Opening Br. at A214-15.

[83] Specifically, InterDigital requested that the Tribunal enter "an order confirming that the 2012 NDA does not prevent the parties from submitting witness testimony and communications between the parties as evidence of the proper interpretations of the PLA." App. to Opening Br. at A34.

[84] App. to Opening Br. at A48 (bold emphasis in original; italics emphasis added).

In the same letter, LG further argued that "[a]rbitral jurisdiction is a creature of contract and the NDA does not provide for arbitral interpretation."[85]  Thus, LG did not agree to have the Tribunal resolve the Dispute.[86]

Nor does the record support the Court of Chancery's conclusion that "[t]he parties agree that the Tribunal at least has the power to determine if the underlying dispute is arbitrable . . . ."[87]  For example, LG argued during oral argument before this Court:  "But one thing we do not agree on, we do not agree the tribunal has the power to determine that the underlying dispute is arbitrable.  We never agreed on that.  We've been disputing that from the beginning."[88]

### *The Majority Errs by Concluding That LG Conceded at Oral Argument that the Tribunal May Resolve the Dispute*

Nor did LG concede at oral argument before this Court, as the Majority contends, that the Tribunal had the power to resolve the Dispute.[89]  The Majority

---

[85] *Id.*

[86] The Majority hints at the vulnerability of its position in stating that "even if LG's attempt to raise the issue before the Tribunal did not constitute an official request to have the Tribunal decide the issue, InterDigital's later response to the Tribunal did constitute such a request for relief."  Majority Op. at 14.  Yet, as shown above, paragraph 9 of the NDA is not "bilateral" in the sense that the non-breaching party can be forced into an arbitral forum.

[87] *LG Elecs., Inc.*, 98 A.3d at 138.

[88] Transcript of Oral Argument at 10, *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, No. 475, 2014 (Del. Mar. 11, 2015).

[89] The Majority states:

> As LG conceded at oral argument, the NDA was a bilateral agreement, and it specifically permitted both parties to seek relief from "any court, agency or tribunal."  As LG also conceded, the NDA's reference to a "tribunal" as one of three forums in which either party can seek "special[] enforce[ment]" was most likely to ensure that the NDA's terms could be interpreted and enforced by an

10

cites to the videotape of the oral argument twice. Neither a viewing of the videotape nor a reading of the transcript of the oral argument, in my view, evinces such a concession.[90] Moreover, as noted above, LG did not agree that an alleged breaching party could compel a non-breaching party to arbitrate disputes arising under the NDA.

There is logic to LG's insistence on its bargained-for contractual right to have the Dispute heard in the Court of Chancery in that a judicial resolution here -- while admittedly inefficient -- allows the non-breaching party to prevent the other party from tainting a proceeding with information that should be precluded. If the purpose of the NDA is to keep Settlement Communications out of certain proceedings,[91] it defeats the purpose to have the adjudicators rule on their admissibility -- and thereafter ask them to "unring the bell" if they conclude that the submissions were inadmissible. LG understandably claims that it would be irreparably harmed by having Settlement Communications disclosed in the Tribunal for this reason. This argument caries some force. While judges in bench trials, for example, are frequently asked to disregard evidence, the "taint" issue is

---

arbitral tribunal, including the one that LG sought to form two months before it signed the NDA.

Majority Op. at 12-13.

[90] A transcription of these cited portions appear as Exhibit A hereto.

[91] For example, paragraph 1 of the NDA provides that, "[e]xcept as otherwise set forth in the Agreement, Settlement Communications shall not be (a) used, referenced, or relied upon in any existing or future legal, judicial, administrative or arbitration proceeding . . . ." App. to Opening Br. at A27, NDA ¶ 1.

11

more pronounced in the arbitration context where the standard of review of an evidentiary issue is a typically high hurdle on appeal.[92] As it turns out in this case, that precise harm has come to pass -- the Tribunal did admit the challenged documents into evidence over LG's objections. LG's counsel now maintains that the decision is "effectively unreviewable."[93]

Similarly, based upon its flawed factual assumption that LG had conceded that the Tribunal had power to determine the matter of arbitrability,[94] the Court of Chancery erroneously concluded that "[t]his case therefore presents the rare instance when both the arbitral tribunal and the court have jurisdiction such that *McWane* could apply."[95] Had the trial court not erred in this regard, it would not have applied *McWane*, as that was the basis for its application of *McWane*.

No Delaware case has ever applied *McWane* to dismiss a suit in favor of a first-filed arbitration. There is a logical reason for this absence of case law as the Court of Chancery observed:

---

[92] During the argument below and to this Court, counsel for LG stated that the difficulty of getting an erroneous decision as to the Settlement Communications overturned was a critical reason for negotiating the NDA protections. App. to Opening Br. at A278-80.

[93] They maintain that overturning the Tribunal's decision would require a showing of "manifest injustice." Transcript of Oral Argument at 12-13, *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, No. 475, 2014 (Del. Mar. 11, 2015).

[94] In this regard, the Court of Chancery states, "[t]he parties agree that the Tribunal at least has the power to determine if the underlying dispute is arbitrable, and the parties also agree that the specific matter at issue in this case arises out of the NDA, which does not contain an arbitration provision." *LG Elecs., Inc.*, 98 A.3d at 138.

[95] *Id.*

In most cases involving an existing arbitration, the defendants will move to dismiss the later-filed action on the grounds that the parties are required to arbitrate the dispute. The court will then rule on the issue of substantive arbitrability or, depending on the parties' contract, dismiss the action so that the arbitral tribunal can rule on that issue. If the dispute is arbitrable, *McWane* never comes up. If the dispute is not arbitrable, then the arbitral tribunal is not "capable of doing prompt and complete justice" and *McWane* does not apply.[96]

By erroneously concluding that the parties had agreed that the Tribunal has the power to determine if the Dispute is arbitrable, the Court of Chancery avoided what it described as a "Morton's fork."[97] Similarly, absent the Majority's error in finding that LG had agreed to have claims arising under the NDA adjudicated by an arbitrator, the Majority would be left with only the second basis for its decision, which I believe is also incorrect under the unique circumstances presented here.

### *The Rights Under the NDA Are Not Merely "Procedural" -- Rather, They Are Separately Bargained-For Substantive Rights*

The second "lynchpin" of the Majority's Opinion is that the "broad right to have the NDA enforced by any 'tribunal' is consistent with the accepted principle that arbitrators can decide evidentiary issues relevant to disputes pending before them."[98] This reasoning ignores the fact that sophisticated parties expressly agreed in the NDA to have Settlement Communications treated in accordance with its substantive terms. In addition, the License Agreement arbitration provision does

---

[96] *Id.*

[97] *See supra* text accompanying note 28.

[98] Majority Op. at 16.

13

not sweep within its reach the issue of the use of "Settlement Communications" as that term is defined in the NDA.[99]

By its plain language, the NDA precludes Settlement Communications from being "used, referenced, or relied upon *in any existing* or future legal, judicial, administrative or arbitration proceeding."[100] Thus, the NDA's prohibition on the use of Settlement Communications in any *existing* proceedings, to an objective third party, would include the present arbitration that was pending when the parties executed the NDA.[101]

In this case, the Majority's decision vitiates the parties' bargained-for substantive rights for the sake of efficiency. However, this Court has made clear that absent a clear contractual intent to arbitrate, it is error to require arbitration in order to avoid obvious inefficiency. For example, in *Parfi Holding AB v. Mirror*

---

[99] The arbitration provision of the License Agreement is narrow in scope and provides in Sections 5.2:

> If a dispute arising under this Agreement has not been resolved by the non-binding procedures set forth in Section 5.1 within the time periods provided, either party may submit the dispute to arbitration administered by the AAA under its AAA International Rules and as set forth in this Section . . . .

On March 19, 2012, LG commenced the Arbitration pursuant to Article 5.2 seeking a declaration that the License Agreement covers the patents asserted by InterDigital. App. to Opening Br. at A63-64.

[100] App. to Opening Br. at A27, NDA ¶ 1.

[101] *See Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("Delaware adheres to the 'objective' theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party.").

*Image Internet, Inc.*,[102] this Court set forth the steps necessary to assess the arbitrability of a claim:

> First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract. If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance.[103]

In *Parfi*, the issue was whether an underwriting agreement's broad arbitration clause would encompass fiduciary duty claims raised by a stockholder of a corporation when those same claims were based on the identical conduct that was an alleged breach of an underwriting agreement and grounds for a claim of fraudulent inducement into that agreement. We held that it was error for the Court of Chancery to find that the fiduciary duty claims were arbitrable, despite the obvious inefficiency of allowing these intertwined claims to proceed in two separate forums.[104] While the public policy of Delaware favors arbitration, we have concluded that "[t]he policy that favors alternative dispute resolution mechanisms, such as arbitration, does not trump basic principles of contract

---

[102] 817 A.2d 149 (Del. 2002).

[103] *Id.* at 155.

[104] *See also Medicis Pharm. Corp.*, 2013 WL 4509652 (because sophisticated parties failed to provide a clear intention to arbitrate certain matters, certain claims were not subject to mandatory arbitration while others were. The Court of Chancery noted that the result was not "optimal.").

15

interpretation."[105]  Thus, "a party attempting to invoke arbitration will not prevail by reciting the message that courts favor arbitration when the contract language they rely on does not demonstrate the parties' intent to submit the dispute in question to arbitration."[106]

Given that the NDA expressly and independently addresses the use of Settlement Communications, it simply cannot be fairly said that disputes relating to Settlement Communications are swept within the License Agreement's narrow arbitration clause.  The Court of Chancery also seemed to acknowledge this point by characterizing the arbitration provision as not expansive enough to "sweep in" the Dispute:

> I would feel a lot more comfortable . . . if your dispute resolution provision in the PLA said "arising out of or relating to."  I think it says "arising under."  It was a narrow, specific agreement-related clause as opposed to a more expansive clause that I thought could sweep in something like that.[107]

As we said in *Parfi,* "arbitration is a mechanism of dispute resolution created by contract," and "[a]n arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement."[108]  Thus, I believe -- as the Court of Chancery seemed to acknowledge

---

[105] *Id.* at *3 (quoting *Parfi Holding AB*, 817 A.2d at 156).
[106] *Id.* at *9 (citation omitted).
[107] App. to Opening Br. at A295.
[108] *Parfi Holding AB*, 817 A.2d at 156.

-- that the claims relating to the use of "Settlement Communications" are not within the narrow scope of the License Agreement's arbitration provision.

Therefore, I believe that *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*,[109] -- a case on which the Majority relies, is distinguishable.[110] In *Trustmark,* the parties entered into "comprehensive arbitration clauses" in which the "parties did agree to arbitrate their disputes about reinsurance."[111] As a result, the United States Court of Appeals for the Seventh Circuit found that the confidentiality agreement was "presumptively within the scope of the reinsurance contract's *comprehensive* arbitration clauses, which cover all disputes arising out of the original dispute."[112] Here, the arbitration clause in the License Agreement was narrowly drawn and the parties agreed to arbitrate *only* disputes arising under the License Agreement.[113]

---

[109] 631 F.3d 869 (7th Cir. 2011).

[110] Similarly, *SOC-SMG, Inc. v. Day & Zimmerman, Inc*., 2010 WL 3634204 (Del. Ch. Sept. 15, 2010), is distinguishable. There, the Court of Chancery held that an arbitrator could address issues of alleged discovery abuse and alleged attorney misconduct. The issues arose directly from breaches of an agreement that contained an arbitration clause. *Id.* at *2. Here, a separate agreement, namely, the NDA, contains separately bargained-for substantive rights that form the basis of the Dispute.

[111] *Trustmark Ins. Co.*, 631 F.3d at 874.

[112] *Id.* (emphasis added).

[113] It is puzzling that the Majority, in observing that the Court of Chancery premised its ruling on the NDA and not the License Agreement, characterizes LG's arguments as "confused." Majority Op. at 2. The Majority's second basis for its ruling relies heavily on the assertion that "the arbitrator's power to resolve a dispute necessarily includes the power to resolve procedural issues relevant to that dispute." *Id.* at 16-17. Thus, it seems that the Majority itself claims that the Dispute arising under the NDA (which the Majority erroneously characterizes as "procedural") must be resolved by relying upon the License Agreement's arbitration provision and the AAA International Rules that it designates as the governing rules.

The Majority's comparison of the License Agreement's arbitration provision with the one in *Trustmark* is flawed.  The Majority states that, "[a]s in *Trustmark*, the parties' arbitration clause in the License Agreement provided broadly that any dispute "arising under" the Agreement would be subject to arbitration."[114] However, in *Trustmark*, the parties agreed to arbitrate "*any dispute or difference* between the General Manager and the John Hancock *relating to* the interpretation or performance of this agreement, including its formation or validity, or any transaction . . . ."[115]  As the Court of Chancery correctly observed, the License Agreement's "arising under" arbitration provision is far more narrow than *Trustmark*'s "relating to" provision, and does not sweep in the Dispute.[116]

Relatedly, and because the NDA is a separate contract concerning substantive rights regarding the use and treatment of confidential Settlement Communications, I believe the Court of Chancery erred in characterizing the Dispute as a purely "procedural" or "evidentiary" matter.  The Majority similarly

---

[114] *See* Majority Op. at 20 n. 57 (citations omitted).
[115] *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 680 F.Supp.2d 944, 949 (N.D. Ill. 2010) (emphasis added) , *rev'd*, 631 F.3d 869 (7th Cir. 2011).
[116] *See* App. to Opening Br. at A63, License Agreement § 5.2 Arbitration of Disputes ("If a dispute *arising under* this Agreement has not been resolved by the non-binding procedures set forth in Section 5.1 [Negotiation of Disputes] within the time periods provided, either party may submit the dispute to arbitration. . . ." (emphasis added)); *see also Douzinas v. American Bureau of Shipping, Inc.*, 888 A.2d 1146, 1150 (Del. Ch. 2006) (implying that an arbitration provision that contains the words "relating to" is broader than one that contains "arising under").  In *Douzinas*, the Court of Chancery noted that "the Supreme Court [has] recognized that words like 'relate to' are to be read broadly."  *Id.* at 1152 n.32 (citing *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286 (Del. 1999)).

characterizes the Dispute as "procedural," as an "incidental question" to the licensing dispute, as an "evidentiary question," or as an "ancillary question of admissibility."

LG's breach of contract claim regarding the Dispute is not properly characterized as a *procedural* matter that is merely incidental to the License Agreement arbitration. Treating LG's claims as merely procedural or incidental matters to be resolved by the Tribunal ignores the substance of the NDA's bargained-for rights, including the ability to prevent "Settlement Communications" from being "used, referenced, or relied upon in any existing . . . proceeding"[117] -- which, on its face, would include the pending arbitration.[118]

Thus, LG is not raising a discovery or admissibility dispute to the Court of Chancery. It is asserting a breach of contract claim under the NDA. Resolution of this breach of contract claim may be a necessary predicate to the proper use of Settlement Communications before the Tribunal. But the breach of contract dispute is a substantive matter that does not fall within the License Agreement's provision relating to the Tribunal's power to determine evidentiary matters.

---

[117] App. to Opening Br. at A27, NDA ¶ 1.

[118] Courts have treated non-disclosure agreements as conferring upon the parties substantive contractual rights. For example, in *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 56 A.3d 1072 (Del. Ch. 2012), *aff'd*, 68 A.3d 1208 (Del. 2012), the Court of Chancery held a trial on the substantive contractual rights under a non-disclosure agreement implicated by a party using and publicly disclosing information in aid of a hostile bid and proxy contest. The Court of Chancery held that Martin Marietta breached the non-disclosure agreement, and accordingly, held that "the victim of any breach of the confidentiality agreements should be entitled to specific performance and injunctive relief should be respected." *Id.* at 1075.

19

The Majority compounds that error in stating that "[h]ad the parties wanted to limit the authority of the arbitral tribunal to determine evidentiary matters, thereby limiting the power granted in the License Agreement itself, they could have done so in the NDA."[119] It suggests that the absence of a clear intention to arbitrate was an inadequate basis to reject the claim that the Dispute was arbitrable, and that an exclusive forum provision, for example, might have added the clarity that LG needed in order to prevail. But as this Court stated in *DMS*, if there is ambiguity as to whether a particular merits-based dispute is within the scope of a valid arbitration agreement, courts should not presume that the parties agreed to arbitrate the matter.[120] While well-established authority affords parties access to a judicial forum in the absence of a clear intention to arbitrate, the Majority would appear to now afford parties access to a judicial forum only if there were a clear intention to have the matter resolved in a judicial forum (*e.g.*, via an exclusive forum provision). The Majority thereby upsets the settled expectations that parties depend upon in entering into their contractual arrangements.

The Majority's fears that a contrary ruling would doom arbitration as a dispute resolution mechanism and flood the courts with discovery matters related to pending arbitrations are not well-founded. This situation is fairly atypical and, in that sense, does not threaten long-standing practices. What is threatened is the

---

[119] Majority Op. at 15.
[120] *See DMS Props.-First, Inc.*, 748 A.2d at 392.

parties' freedom to freely contract around the general practices. While trumpeting the virtues of arbitration, the Majority does violence to basic principles of freedom of contract and to well-established lines of precedent regarding substantive arbitrability.

Because I believe that the Court of Chancery erred in the threshold substantive arbitrability analysis, it should not have embarked on the *McWane* analysis. Accordingly, I will not address it here.

For the foregoing reasons, I respectfully DISSENT.

# Exhibit A

IN THE SUPREME COURT OF THE STATE OF DELAWARE


LG ELECTRONICS, INC.,        )
                             )
                             )No. 475,2014
        Plaintiff Below,  )
        Appellant,           )
                             )ON APPEAL FROM C.A.
v.                           )NO. 9747-VCL IN THE
                             )COURT OF CHANCERY
INTERDIGITAL                 )OF THE STATE OF
COMMUNICATIONS, INC.,        )DELAWARE
INTERDIGITAL TECHNOLOGY      )
CORPORATION, and IPR         )
LICENSING, INC.,             )
                             )
        Defendants Below,)
        Appellees.           )


                  March 11, 2015

APPEARANCES:
    JEREMY  D.  ANDERSON,  ESQ.
    SCOTT  A.  ELENGOLD,  ESQ.
    MICHAEL  J.  MCKEON,  ESQ.
    JOSEPH  B.  WARDEN,  ESQ.
    FISH & RICHARDSON, P.A.
    For the Appellant

    NEAL C. BELGAM, ESQ.
    SMITH, KATZENSTEIN & JENKINS LLP

    -and-

    DAVID S. STEUER, ESQ.
    WILSON SONSINI GOODRICH & ROSATI, P.C.
    For the Appellees

             WILCOX & FETZER
     Registered Professional Reporters
1330 King Street - Wilmington, Delaware 19801
             (302) 655-0477
             www.wilfet.com

with that. But one thing we do not agree on, we do not agree the tribunal has the power to determine that the underlying dispute is arbitrable. We never agreed on that. We've been disputing that from the beginning.

JUDGE CHAPMAN: Counsel, doesn't the PLA say that any disputes, the tribunal can decide evidentiary disputes?

MR. MCKEON: The PLA does say that. And if this was about the PLA and we were talking about the PLA, that would be perfectly acceptable. But the dispute at issue here is about the NDA, the nondisclosure agreement.

CHIEF JUSTICE STRINE: No. But I think what Judge Chapman is getting at is you name an arbitrator to decide a dispute, and the reality is, and parties love this. They say that when it's convenient they want to go to the arbitration because it's so efficient.

Then they say but every single thing that the arbitrator does is collateral, like all the normal things that a judge or an arbitrator has to do to actually decide the

matter, which includes rule on issues of admissibility, what evidence comes in.

And I believe what Judge Chapman's getting at is doesn't the arbitrator have the power under this to make the normal evidentiary rulings that are necessary to get the case decided?

MR. MCKEON: So the answer to that is yes.

CHIEF JUSTICE STRINE: And if the arbitrator rules in your favor on the contractual issue and keeps the evidence out, you would have a complete remedy at law from the harm you were seeking to avoid in the Court of Chancery, right?

MR. MCKEON: Again, we dispute the fact they have the power to adjudicate the contract. The evidence issue --

CHIEF JUSTICE STRINE: They have the power to keep out evidence because it's being admitted in violation of a privilege or other thing.

MR. MCKEON: Certainly they have that power, Your Honor.

CHIEF JUSTICE STRINE: And if that was kept out, that was the only live harm you were seeking to have the Court of Chancery rectify, right?

MR. MCKEON: Well, Your Honor, I take a step back and say we don't have our day in court because, in fact, as you may be aware, since the opinion below was issued, the arbitration panel did pick up the issue and determined that materials could come into the case. So it ruled against us.

CHIEF JUSTICE STRINE: Yes.

MR. MCKEON: And that was after our proceeding below, subsequent to that. In fact, if you look at what they did --

CHIEF JUSTICE STRINE: And if they were wrong at the end and you have FAA review, that's potentially something you can raise under that, right?

MR. MCKEON: You're right, Your Honor. But it's effectively unreviewable. The manifest injustice, the standard on reviewing that, when we believe that we had a private contract right and they should never

have even dealt with that contract, the standard for review is quite difficult.

So that is why we were in Delaware, which we had a right to under our contract that we negotiated that the Delaware court should determine that, not the arbitration panel because we never agreed to that. And what's happened here fundamentally is we've forgotten about --

CHIEF JUSTICE STRINE: Wait. How can you even invoke the jurisdiction of the Court of Chancery, then? Because if there's a -- if the arbitrator keeping the evidence out is an adequate remedy.

MR. MCKEON: Because we have a specific right in this contract, Your Honor, to go --

CHIEF JUSTICE STRINE: Specific performance is only granted if, you know, it's typically only granted when it's necessary. If you could obtain the relief in arbitration, why would the Court of Chancery grant a specific performance anyway?

MR. MCKEON: Because we have a

Mr. Steuer.

MR. MCKEON: Thank you. Just a few points to follow up, if I may.

On Medicis, of course there was a judicial carve-out, and which entitled the parties to go enforce it in court. In this case the NDA, of course, the specific language that was agreed on by both sides, two sophisticated parties, that we were entitled to go and enforce it in court.

CHIEF JUSTICE STRINE: Okay. But you're also entitled to enforce it in tribunal. You make a big point in the arbitration going in, we're suing you in arbitration. They can't use this information.

I asked you whether it was bilateral or not. They send back and say, yes, you can, Tribunal. You then say, no, you can't. Isn't that pending before a tribunal first?

MR. MCKEON: The NDA issue, Your Honor, we think --

CHIEF JUSTICE STRINE: The NDA says you can go to a court, agency, or

tribunal. I asked you whether it was bilateral. I think you said that it is bilateral, and you then went and you sued them in arbitration and said they can't do this. These guys come back, your friends come back and say, yes, we can. It's not a violation.

You come back to the arbitrator and say, no, it's not, but you can't rule on it. We don't think you're a tribunal.

You go to the Court of Chancery. Court of Chancery says, you know what? Arbitration tribunal is a tribunal. It has equitable authority. It was the first contractually named tribunal court or agency seized with the question, and under McWane we're not supposed to have two tribunals doing the same thing at once. And this is also analogous to a well-settled line of law about arbitrators getting to decide evidentiary disputes and I'm just going to follow this sort of pretty moderate course of action.

MR. MCKEON: So, your Honor, just to respond to that, again, I think first of all in terms of who raised it in the

arbitration, we certainly started the arbitration because, of course, they sued us.

CHIEF JUSTICE STRINE: But it doesn't matter who raised it because unless you're saying that you -- is there a language in the contract that says you're the only one who has rights?

MR. MCKEON: We both have rights under the confidentiality agreement. But it's not bilateral in the sense that if we invoke our right to go to a district court or a court that has jurisdiction, that they can raise it somewhere else.

CHIEF JUSTICE STRINE: You're the first person in the -- you're the first party in the tribunal who actually said this is relevant and nobody can bring this in, right?

MR. MCKEON: We referenced it, Your Honor. We referenced it as a prophylactic measure saying --

CHIEF JUSTICE STRINE: And after they said they were going to, you then said, no, no, no, they can't.

MR. MCKEON: What we said was,

Tribunal, you don't have the power to deal with this.

CHIEF JUSTICE STRINE: Because you argued they were not a tribunal and --

MR. MCKEON: Absolutely. They're not --

CHIEF JUSTICE STRINE: That's what I'm asking you. If the Court of Chancery was correct that they were, doesn't your argument turn to contractual dust?

MR. MCKEON: No, Your Honor. Remember, the Court of Chancery below --

CHIEF JUSTICE STRINE: No. I want to push you on this.

MR. MCKEON: Okay.

CHIEF JUSTICE STRINE: If the arbitrable tribunal was a tribunal within the meaning of that contract.

MR. MCKEON: No. I think that's incorrect because we have a right -- we have a right --

CHIEF JUSTICE STRINE: That's what I mean. That means that even if one of the named places where you can enforce this

has already had the issue put before it, you get to trump that and to take it to another one. And where in the contract does it say that, your right of removal?

MR. MCKEON: Well, your Honor, what I would say to answer that is we have to go back to the fundamentals here.

CHIEF JUSTICE STRINE: That is the fundamentals. I am asking you, it's a very important thing. The contract uses three words. You admit they're not exclusive. You admit you can use any of them. You haven't really spent any time arguing that the arbitration tribunal is not a tribunal.

It's pending before the tribunal. Why is it that you, your client, is the special party under the contract who then gets to lift one of the named deciders in favor of its second -- its preferred forum?

MR. MCKEON: Well, Your Honor, when you say we haven't argued, we haven't argued it's not a tribunal. There's no arbitration provision here, so there's no rights to arbitrate this. That's been our

position.

CHIEF JUSTICE STRINE: No, no. I get that. But it says under the NDA that you can go to a tribunal for specific performance. I asked you whether that was bilateral, which means they can also invoke it and say, no, this doesn't gag us. You then put the issue and said it does gag them.

You haven't spent any time arguing they are not a tribunal within the meaning of the NDA itself. Wouldn't you admit that the reason that the tribunal is in there is because FTC proceeding covers what? What word covers FTC proceedings?

MR. MCKEON: It's a government agency.

CHIEF JUSTICE STRINE: Agency.

MR. MCKEON: Yes.

CHIEF JUSTICE STRINE: You've got courts. You have a tribunal. Part of the reason why you have a tribunal is what is one of the obvious places they would have used these documents given the relationship that you had with them as a party?

MR. MCKEON: Well, Your Honor --

CHIEF JUSTICE STRINE: Which tribunal cover?

MR. MCKEON: Your Honor, you know, there's international tribunals, there's --

CHIEF JUSTICE STRINE: Of what kind?

MR. MCKEON: Maybe it's arbitration, Your Honor. But I think, remember, the Court below held specifically in this contract there was no clear manifestation of intent to arbitrate. The Court held. It's not in this contract. That's what they held. So there is no arbitration right.

According to the Court, the word "tribunal" is there, and the Court dealt with this. And the Court said, you know what, yes, there's no right here. It's not under this law of this Court. There's no clear manifestation of that. So no, there's not a requirement to arbitrate. That's what the Court held.

And the Court got that right. It

was absolutely right to hold that.  That is why, Your Honor --

CHIEF JUSTICE STRINE:  Thank you very much.

MR. MCKEON:  Thank    you.

CHIEF JUSTICE STRINE:  And, Counsel, anybody who argues a case involving the word "arbitrability" before lunch is fully entitled to enjoy their lunch.  So  thank  you for your excellent arguments.

MR. MCKEON:  Thank you.  Thank you very much.

(End of proceeding.)