DMS PROPERTIES–FIRST, INC.,
Plaintiff Below, Appellant,

v.

P.W. SCOTT ASSOCIATES, INC.,
Defendant Below, Appellee.

No. 357, 1999.

Supreme Court of Delaware.

Submitted: Jan. 19, 2000.
Decided: March 17, 2000.

Francis J. Trzuskowski (argued), William L. Doerler, of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Delaware, for appellant.

Paul Cottrell, of Tighe, Cottrell & Logan, P.A., Wilmington, Delaware, for appellee.

Before WALSH, HOLLAND and HARTNETT, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment entered by the Court of Chancery against the plaintiff-appellant, DMS Properties–First, Inc. ("DMS") and in favor of the defendant-appellee, P.W. Scott Associates, Inc. ("Scott Associates"). DMS argues that, under the circumstances presented, the Court of Chancery committed reversible error by giving deferential review to an arbitration panel's decision to dismiss DMS' request for arbitration on the basis of non-arbitrability. We agree. Therefore, the judgment of the Court of Chancery is reversed and this matter is remanded for a *de novo* examination on the issue of non-arbitrability.

### Facts

On January 15, 1993, Dennis Salter and Peder W. Scott signed an agreement for architectural services regarding the conversion of a school building into an apartment complex. Salter, who was president of both Holcomb & Salter (also known as HSL, Inc.) and DMS, signed the agreement on behalf of Holcomb & Salter. DMS was not mentioned in the agreement. Scott signed in his capacity as president of P.W. Scott Associates, Inc. The dispute resolution clause of the agreement states:

6. Any and all disputes between the parties to this contract shall be adjudicated by arbitration under the auspices of the American Arbitration Association [ ("AAA") ]. Such proceedings shall take place in the State of Delaware. The award rendered by the arbitrator or arbitrators shall be fixed and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

After the agreement was executed, DMS became the principal entity through which the contract was performed. The agreement was never revised in any subsequent writing, however, to substitute DMS for Holcomb & Salter. A dispute arose between the parties regarding some of the architectural drawings created for the project. Salter claimed that the drawings were defective and sought money damages.

On December 28, 1995, Salter, in his individual capacity, Holcomb & Salter, and DMS filed a Notice of Intention to Arbitrate against Scott Associates. The notice apparently complied with all relevant provisions of 10 *Del. C.* § 5703(c). Scott Associates did not file a motion to have the Court of Chancery enjoin the arbitration proceedings.[1]

DMS filed a Demand for Arbitration with the American Arbitration Association ("AAA") requesting that an arbitration hearing be held. Scott Associates filed a Motion to Dismiss with the arbitration panel. The arbitration panel granted Scott Associates' Motion to Dismiss on the ground that no valid agreement to arbitrate existed between Scott Associates and DMS.

DMS filed an application with the Court of Chancery pursuant to 10 *Del. C.* § 5714(a)(3) asserting that the arbitration panel was without power to determine the question of arbitrability. DMS asked the Court of Chancery to vacate the arbitration panel's dismissal and compel Scott Associates to arbitrate the merits of its claim. The Court of Chancery, albeit reluctantly, applied a deferential standard of review to the arbitrators' determinations regarding non-arbitrability. The Court of Chancery entered a final judgment upholding the arbitration panel's determination of non-arbitrability in favor of Scott Associates.

---

1. 10 *Del. C.* § 5703(c).

### Delaware Uniform Arbitration Act

In 1972, the Delaware General Assembly enacted the Delaware Uniform Arbitration Act ("DUAA").[2] The Delaware statute provides that "a written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable."[3] Jurisdiction to enforce arbitration agreements and to enter judgments on arbitration awards is vested in the Court of Chancery.[4]

 This Court has recognized that the public policy of Delaware favors arbitration.[5] A party cannot be forced to arbitrate the merits of a dispute, however, in the absence of a clear expression of such intent in a valid agreement.[6] The threshold question regarding the validity of an arbitration agreement is known as substantive arbitrability.[7] A party who has not agreed to arbitrate has a right to have the merits of dispute adjudicated *ab initio* by a court of competent jurisdiction.[8] When an action is commenced under Section 5703 of the Delaware statute to either compel or enjoin arbitration, a question of substantive arbitrability is decided by the Court of Chancery as a matter of contract law and reviewed by this Court *de novo*.[9]

 This case presents questions of first impression for this Court because there was no Section 5703 request made by either party to have the Court of Chancery either compel or enjoin the arbitration. Consequently, in this case, the threshold question of arbitrability was initially presented to the arbitration panel. This Court must decide the proper standard of review when the issue of arbitrability is presented to the Court of Chancery for the first time under Section 5714, in an application to vacate an arbitration panel's dismissal on the ground of non-arbitrability.

The facts and issues in this case are strikingly similar to the ones addressed by the United States Supreme Court in *First Options of Chicago v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *Kaplan* involved the proper standard of appellate review under the Federal Arbitration Act following an arbitrator's decision as to the question of arbitrability itself. The Supreme Court held that if the parties did not *clearly agree* to submit the question of arbitrability to arbitration, then a reviewing court must decide arbitrability independently and without deference, just as it would decide any other

**2.** That statutory scheme is codified in 10 *Del. C.* §§ 5701–5725. The General Assembly did not adopt the Uniform Arbitration Act verbatim. The Uniform Arbitration Act ("UAA") was promulgated by the National Conference of Commissioners on Uniform State Laws in 1955. Unif. Arbitration Act, 9 U.L.A. 76 (1957).

**3.** 10 *Del. C.* § 5701.

**4.** 10 *Del. C.* § 5702(a).

**5.** *SBC Interactive, Inc. v. Corporate Media Partners,* Del.Supr., 714 A.2d 758, 761 (1998).

**6.** *Pettinaro Constr. Co., Inc. v. Harry C. Partridge Jr. & Sons, Inc.,* Del. Ch., 408 A.2d 957, 963 (1979).

**7.** *SBC Interactive, Inc. v. Corporate Media Partners,* 714 A.2d at 761. *See also AT & T*

*Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Falcon Steel Co. v. Weber Eng'g Co.,* Del. Ch., 517 A.2d 281, 287 (1986); 4 Am.Jur.2d *Alternative Dispute Resolution* § 74 (1995).

**8.** *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *Accord SBC Interactive, Inc. v. Corporate Media Partners,* Del.Supr., 714 A.2d 758 (1998). The Federal Arbitration Act requires *de novo* review of the decision on appeal. *McMahan Sec. Co. v. Forum Capital Markets,* 2nd Cir., 35 F.3d 82 (1994) (appeals from district court decisions refusing or compelling arbitration are reviewed *de novo*); *Tays v. Covenant Life Ins. Co.,* 5th Cir., 964 F.2d 501 (1992) (decision not to compel arbitration reviewed *de novo* ).

**9.** *SBC Interactive, Inc. v. Corporate Media Partners,* 714 A.2d at 761.

question of law by applying a *de novo* standard of review.[10]

■ The question of whether the parties agreed to arbitrate is generally one for the courts to decide and not for the arbitrators.[11] "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns up what the parties agreed about that matter."[12] If the parties agreed to submit the question of arbitrability itself to arbitration, the standard of review is deferential.[13] Conversely, if the parties did not agree to submit the question of arbitrability itself to arbitration, the court must review the question of arbitrability independently or *de novo*.[14]

■ The United States Supreme Court stated that these differing standards of review followed "inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties had agreed to submit to arbitration."[15] The law presumes that parties who agreed to arbitrate the merits of some disputes also agreed to arbitrate the merits of issues on which their agreement is either silent or ambiguous.[16] Nevertheless, the United States Supreme Court held that courts should not presume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so."[17] Thus, the legal presumptions are

reversed when there is silence or ambiguity about who should decide arbitrability vis-a-vis when there is silence or ambiguity about the question of whether a particular merits-related dispute is within the scope of a valid arbitration agreement.[18]

In this case, the record reflects that neither Scott Associates nor DMS agreed to submit the issue of arbitrability to arbitration. The fact that Scott Associates did not seek to enjoin the arbitration and argued the "arbitrability issue to the arbitrator[s] does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be affectively bound by the arbitrators' decision on that point."[19] To the contrary, as in *Kaplan*, to the extent that Scott Associates submitted written memoranda in support of its Motion to Dismiss on the basis that the arbitration panel was without jurisdiction, it demonstrates an *unwillingness* to consent to the arbitration panel's authority.[20] Similarly, DMS did not clearly agree to submit the question of arbitrability to the arbitrators. In fact, in opposing Scott Associates' Motion to Dismiss, DMS argued that the issue of arbitrability could not be decided by the arbitration panel because it was beyond the scope of authority found in 10 *Del. C.* § 5714(a)(3). Therefore, we hold that since the parties did not agree to submit the question of arbitrability to arbitration, that issue was subject to an independent or *de novo* determination by the Court of Chancery when it was raised for the first

**10.** *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 943–45, 115 S.Ct. 1920.

**11.** *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d at 761.

**12.** *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 943, 115 S.Ct. 1920.

**13.** *Id. See Pettinaro Const. Co., Inc. v. Harry Partridge, Jr. & Sons, Inc.*, Del. Ch., 408 A.2d 957, 963 (1979) (Where ambiguities relating to the issue of arbitrability exist, the question of arbitrability itself *may* be submitted to the arbitrators).

**14.** *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 943, 115 S.Ct. 1920.

**15.** *Id.*

**16.** *Id.*

**17.** *Id.* at 944, 115 S.Ct. 1920.

**18.** *Id.*

**19.** *Id.* at 946, 115 S.Ct. 1920.

**20.** *See id.* at 946, 115 S.Ct. 1920.

time under Section 5714.[21]

Our conclusion that the Court of Chancery erred in applying a deferential standard of review finds support in decisions of other jurisdictions that have enacted a form of the Uniform Arbitration Act.[22] For example, in *Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates*,[23] the Maryland Court of Appeals held that the proper procedure for reviewing a jurisdictional challenge to an arbitration award was to conduct *de novo* review. The Maryland court stated that the deferential standard of review was appropriate "only where the parties indisputably agree to submit to arbitration."[24] In instances where the arbitrators' very authority to hear a dispute is challenged, deference to the arbitrators' assertion of jurisdiction is improper.[25] "Because the existence of an agreement to arbitrate is a threshold issue, the courts must have authority to assess, independently of the arbitrators' point of view, whether or not the parties ever reached such an agreement."[26]

### Conclusion

The decision of the arbitration panel that granted Scott Associates' Motion to Dismiss on the basis of non-arbitrability should have been accorded no deference by the Court of Chancery. The Court of Chancery should have received evidence regarding whether an agreement to arbitrate actually existed between DMS and Scott Associates and then independently decided the issue of non-arbitrability *de novo*. The judgment of the Court of Chancery is reversed. This matter is remanded for further proceedings in accordance with this opinion.

**21.** *SBC Interactive v. Corporate Media Partners*, Del.Supr., 714 A.2d 758, 761 (1998).

**22.** *Patton v. Hanover Ins. Co.*, Pa.Super., 417 Pa.Super. 351, 612 A.2d 517 (1992); *see also State v. State Police Officers Council*, Iowa Supr., 525 N.W.2d 834 (1994); *Providence Teachers Union v. Providence Sch. Bd.*, R.I.Supr., 725 A.2d 282 (1999); *Thomas W. Ward & Assoc., Inc. v. Spinks*, Fla. Ct.App., 574 So.2d 169 (1990); *Alphagraphics Franchising, Inc. v. Stebbins*, Fla. Ct.App., 617 So.2d 463 (1993); *Valero Energy Corp. v. Teco Pipeline Co.*, Tex. Ct.App., 2 S.W.3d 576, 581 (1999); *Weber v. Hall*, Tex. Ct.App., 929 S.W.2d 138, 141 (1996). *See also Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, Tex. Ct. App., 950 S.W.2d 375 (1996); *Stanley–Bostitch, Inc. v. Regenerative Envtl. Equip. Co., Inc.*, R.I.Supr., 697 A.2d 323, 325 (1997).

**23.** *Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates*, 313 Md. 652, 547 A.2d 1048 (1988).

**24.** *Id.* at 1051.

**25.** *Id.* (citations omitted).

**26.** *Id.* at 1052.