**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LOREN MITCHELL
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 25, 2025

Lisa A. Schmidt, Esquire
Matthew D. Perri, Esquire
Brendan W. Clark, Esquire
Richards, Layton, & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

Sarah R. Martin, Esquire
Trevor T. Nielsen, Esquire
Greenberg Traurig, LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801

> RE: *MarketWise, LLC, and MarketWise, Inc. v. Mark Arnold*,
> C.A. No. 2025-0193-LM

Dear Counsel:

Pending before me are the cross-motions for summary judgment in Plaintiffs' request for the Court to find that Defendant's claims, seeking damages for alleged loss of equity interest in MarketWise, are not subject to arbitration. Briefing on these motions concluded on March 30, 2025. An in-person oral argument on the motions was held on July 15, 2025. For the reasons I explain below, I find that the parties herein have agreed in the employment agreement to arbitrate issues of arbitrability.

## I.  FACTUAL BACKGROUND[1]

By way of background, plaintiff, MarketWise, LLC, is a Delaware limited liability company.[2] The other plaintiff, MarketWise, Inc., is a Delaware corporation (hereinafter collectively, "MarketWise" or "Plaintiffs").[3] Defendant, Mark Arnold (hereinafter, "Mr. Arnold" or "Defendant") is the former CEO and a former board member of MarketWise, LLC.[4] Defendant is also the former CEO and a former Chairman of the board of MarketWise, Inc.[5]

### A.  Defendant's Employment and Equity Interests

Mr. Arnold was hired by Marketwise in 2013 as the Director of Business.[6] In 2017, Plaintiffs promoted Mr. Arnold to CEO of MarketWise.[7] The Second Amended and Restated Operating Agreement (hereinafter, "Operating Agreement"),

---

[1] Citations to the Docket, and if needed, the exhibits attached, are cited in the form of "D.I. __, Ex. #". The parties have jointly submitted exhibits 1–8 which are cited herein as "JX-__." D.I. 13 at 2 n.1; See D.I. 13, Ex. 1–8. What follows is a statement of the facts based upon the agreed upon facts of the parties, the exhibits submitted onto the docket, and when necessary factual determinations after weighing the assertions and evidence presented within each individual motion in favor of the nonmoving party.

[2] D.I. 6 at ¶ 6.

[3] *Id.* at ¶ 7.

[4] *Id.* at ¶ 8.

[5] *Id.* at ¶ 8.

[6] *Id.* at ¶ 11.

[7] *Id.* at ¶ 12.

to which Defendant and Plaintiffs are parties, was fully executed on June 20, 2020.[8] The parties then fully executed an employment agreement (hereinafter, "Employment Agreement"), which concerned Defendant's service as the Executive of MarketWise, on July 27, 2020.[9] Both the Employment Agreement and the Operating Agreement have a retroactive effective date of December 1, 2019.[10] Under the Second Amended and Restated Operating Agreement, MarketWise made Defendant a member of MarketWise by awarding him Class B equity unit shares.[11]

The Employment Agreement contained an equity incentive compensation provision which states in pertinent part that "the Executive shall be eligible to receive equity incentive compensation with respect to the Company . . . pursuant to the applicable equity incentive compensation plan documents of the Company . . . or other agreements between Executive and the Company."[12] The Employment Agreement also contains an arbitration provision.[13] Under this, the Parties agreed to submit any dispute arising from or relating to the Employment Agreement to the American Arbitration Association ("AAA") for arbitration to take place in

---

[8] JX 1 at 1.

[9] D.I. 13, Ex. A; JX 4.

[10] JX 1 at 1; *See* JX 4 at 1.

[11] JX 1, exhibit A-1; *See* D.I. 6 at ¶ 13.

[12] JX 4 at §2(d); D.I. 6 at ¶ 13.

[13] JX 4 at §12.

Baltimore, Maryland.[14] The provision also stated that "the Parties will not be permitted to pursue court action regarding claims that are subject to arbitration."[15]

In 2020, Defendant started negotiating with a Special Purpose Acquisition Company (hereinafter, "the SPAC").[16] Defendant's negotiations with the SPAC culminated in a Business Combination Agreement (hereinafter, "the BCA") between MarketWise and the SPAC that dates as of March 1, 2021.[17] Under the BCA, Plaintiffs and the SPAC would merge, which would trigger the full vesting of Defendant's equity per the terms of the Operating Agreement.[18] On June 21, 2021, the BCA closed and Defendant's equity accelerated such that it fully vested per the terms of the Operating Agreement.[19]

Pursuant to the terms of the BCA, the parties executed the Third Amended and Restated Operating Agreement (hereinafter, "Amended Operating Agreement"), dated July 21, 2021.[20] Under this Agreement, Defendant's equity vested according to an 8-year schedule; however, if the company were sold or underwent a change of

---

[14] *Id.*

[15] *Id.*

[16] D.I. 6 at ¶16.

[17] JX 2; D.I. 6 at ¶16.

[18] JX 1 at §3.2; JX 2, Recital at 2; D.I. 6 at ¶17

[19] D.I. 6 at ¶18; JX 2, Recital at 2; JX 1.

[20] JX 2, Recital at 2; *see* JX 3.

control, the vesting schedule would accelerate and Defendant's equity would accelerate and fully vest.[21] Furthermore, Section 15.10 of the Third Amended and Restated Operating Agreement states that "[a]ny suit, dispute, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement shall be heard in the state or federal courts of the State of Delaware, and the parties hereby consent to the exclusive jurisdiction of such courts . . .."[22]

### B.    Defendant's Employment with MarketWise Ends

On November 17, 2022, Defendant's employment with MarketWise ended and Defendant executed the Letter Agreement and Release of Claims ("the Release") that collectively governed the terms of his separation from MarketWise.[23] It is disputed whether Defendant resigned or was terminated.[24] The Letter Agreement contains a Severance Payment provision which provides that Defendant would be entitled to a lump-sum cash Severance Payment of $8,510,225 (less applicable

---

[21] D.I. 6 at ¶15; JX 1 at §3.2.

[22] JX 3 at §15.10.

[23] D.I. 6 at ¶19; JX 5; JX 6.

[24] *See* D.I. 6 at ¶ 19.

deductions) so long as Defendant complied with the Employment Agreement, Letter Agreement, and Release.[25]

The letter agreement states in pertinent part, "The Company . . . voluntarily release and discharge you generally from all known or suspected claims, demands, actions, . . . of every name and nature in law or in equity in connection with your services . . .."[26] The Letter Agreement contains two exceptions in that: (1) it does not "apply to claims that cannot legally be released[;]" and (2) it does not limit the Company's ability to pursue claims under this Letter Agreement or any claims arising after the Company signs this Letter Agreement (including claims under the Employment Agreement).[27] The Release also contains an arbitration provision that states, "any and all disputes arising out of or in any way relating to this Release shall be submitted to binding arbitration . . . and conducted in accordance with the Rules of the American Arbitration Association."[28]

---

[25] JX 5 at § 2.

[26] *Id.* at § 4(a).

[27] *Id.*

[28] JX 6 at § 4.

### C.   Equity Rescission and the Ensuing Dispute

On July 12, 2024, Plaintiffs rescinded Defendant's equity interests.[29] Plaintiffs later reinstated Defendant's equity, however Mr. Arnold rejects the reinstatement of the equity units because he declares it to be an inadequate remedy due to the market value of the stock declining in the intervening months.[30] On November 22, 2024, Defendant submitted a demand to the American Arbitration Association (AAA) (hereinafter, "Demand") claiming that: (1) Plaintiffs breached the Employment Agreement when they rescinded Defendant's equity; (2) Plaintiffs breached the Letter Agreement's "Severance Payment" and "Company Release" provisions, as well as the Release itself, by rescinding Defendant's equity; and (3) Plaintiffs violated the Maryland Wage Payment and Collection Act by rescinding Defendant's equity.[31] In the demand Defendant requests relief in the form of money damages of Nine Million Dollars ($9,000,000.00), treble damages under the wage act, attorneys' fees and costs, and prejudgment interest.

---

[29] JX 7.

[30] D.I. 6 at ¶ 23; JX 8.

[31] JX 8 at 20–24.

## D. Procedural Posture

On February 2, 2025, Plaintiffs, MarketWise, LLC and MarketWise, Inc., filed a complaint requesting declaratory judgment, requesting the Court to enjoin Defendant from prosecuting his demand before the AAA, and requesting an award of attorneys' fees and costs.[32] On March 17, 2025, Defendant filed an answer requesting that the Court dismiss the Complaint with prejudice and that the Court compel Plaintiffs to arbitrate the demand.[33] That same day, Defendant moved to compel arbitration.[34]

On April 24, 2025, the parties each moved for summary judgment alongside opening briefs.[35] On May 14, 2025, Plaintiffs filed a motion to expedite or, in the alternative, a motion for preliminary injunction seeking to resolve the pending dispositive motions or temporarily stay an arbitration filing until their resolution.[36] A telephonic hearing on Plaintiffs' motion for expedited proceedings or, in the alternative, motion for preliminary injunction was held on May 28, 2025.[37] The

---

[32] D.I. 1.

[33] D.I. 6.

[34] D.I. 7.

[35] D.I. 10; D.I. 11; D.I. 12.

[36] D.I. 17.

[37] D.I. 19; D.I. 26.

matter was taken under advisement.[38] A telephonic bench ruling was held on May 29, 2025, in which the Court denied Plaintiffs' motion to expedite but granted Plaintiffs' motion for preliminary injunction, enjoining Mr. Arnold from pursuing the claims within the Demand under the AAA.[39]

On May 30, 2025, the parties each submitted their final responsive briefs in support of their respective motions for summary judgment. [40] Oral argument took place as scheduled on July 15, 2025.[41] Thereafter, I took this matter under advisement.

## II.   ANALYSIS

The Court will grant a motion for summary judgment through a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[42] A material fact that will preclude summary judgment is one that "might affect the outcome of the suit under governing law."[43] A genuine issue of material fact exists where "the evidence is such that a reasonable

---

[38] D.I. 26.

[39] D.I. 29; D.I. 28.

[40] D.I. 31; D.I. 32.

[41] D.I. 30; D.I. 38.

[42] Ct. Ch. R. 56(c).

[43] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009) *(quoting Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, at *248 (June 25, 1986)).

jury could return a verdict for the nonmoving party."[44] "[T]he moving party has the burden of demonstrating that there is no material question of fact."[45] After the moving party has met this burden, the burden then shifts to the non-moving party to produce "some evidence of a disputed material fact."[46]

"In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party."[47] "When the Court is presented with cross-motions for summary judgment, the Court may 'deem the motions to be the equivalent of a stipulation for decision,' but '[t]he existence of cross-motions . . . does [not] change the standard for summary judgment.'"[48] When cross-motions are filed and the parties have identified no issues of material fact the Court may deem the motions to be "the equivalent of a stipulation for decision on the merits based on the record submitted."[49] When evaluating these cross-motions, "the court examines each motion independently and only grants a motion for summary judgment to one

---

[44] *Id.*

[45] *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co.*, 853 A.2d 124 at *126 (Del. Ch. Mar. 10, 2004).

[46] *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782 at *8 (Del. Ch. June 12, 2024).

[47] *Senior Tour Players,* 853 A.2d at *126.

[48] *Harris v. Limon-Nunez*, 2021 WL 8741647, at *4 (Del. Ch. Oct. 22, 2021) (quoting *Bernstein v. Tact Manager, Inc.*, 953 A.2d 1003, at *1007 (Del. Ch. Nov. 20, 2007)).

[49] Ct. Ch. R. §56(h).

of the parties when there is no disputed issue of material fact and that party is entitled to judgment as a matter of law."[50] "[T]he mere existence of cross-motions does not necessarily indicate that summary judgment is appropriate for one of the parties [and] a movant will be granted relief only if the Court determines that the record does not require a more thorough development to clarify the law or its application to the case."[51]

In this case the parties agree to the submission of documents that are material to the underlying question of arbitrability to Mr. Arnold's claims.[52] Additionally, the parties, by in large, agree to the facts relevant to any necessary determination of law on the validity of the arbitration clauses in the provided agreements and do not appear to make any specific arguments to there being any dispute of material fact in their respective briefings.[53]

---

[50] *Harris*, 2021 WL at *4 (quoting *Bernstein*, 953 A.2d at *1007).

[51] *Baring v. Condrell*, 2004 WL 2340047, at *3 (Del. Ch. Oct. 18, 2004) (citing *Kronenberg v. Katz*, 872 WL 568, at *584 (Del. Ch. 2004)).

[52] D.I. 12 at 2 n. 2; D.I. 6.

[53] D.I. 12 at 10; D.I. 10.

### A. The Employment Agreement clearly and unmistakably shows the parties have agreed to arbitrate questions of substantive arbitrability.

"The threshold question regarding the validity of an arbitration agreement is known as substantive arbitrability."[54] "In order to determine whether claims should be resolved through arbitration, the court must first determine whether substantive arbitrability will ultimately be decided by the court or [by] an arbitrator."[55] The Court decides questions of substantive arbitrability "unless the parties clearly and unmistakably provide otherwise."[56]

"[T]he parties are considered to have explicitly and clearly provided for arbitrability to be an issue for the arbitrator where they have 'generally provide[d]' for arbitration of all disputes, and 'incorporate[d] a set of arbitration rules (such as the AAA rules) that provide for the arbitrator to address the issue."[57] When the arbitration agreement incorporates a set of arbitration rules that delegate to the arbitrator issues of arbitrability a heavy presumption is created that "the parties

---

[54] *DMS Properties-First, Inc. v. P.W. Scott Associates, Inc.*, 748 A.2d 389, 391 (Del. 2000).

[55] *West IP Common's, Inc. v. Xactly Corp.*, 2014 WL 3032270, at *6 (Del. Super. Ct. June 25, 2014).

[56] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006) (internal quotation marks omitted).

[57] *Hagler v. Evolve Acquisition LLC*, 2021 WL 6123549, at *4 (Del. Ch. Dec. 28, 2021) (quoting *Willie Gary, LLC*, 906 A.2d at 80); *see also McLaughlin v. McCann*, 942 A.2d 616, 625 (Del. Ch. Feb. 21, 2008) ("[A] reference to the AAA Rules provide[s] evidence of the parties' clear and unmistakable intent to arbitrate arbitrability.").

intended to delegate substantive arbitrability[,]" and then the remaining prong asks "whether that heavy presumption is overcome because the parties did not agree to arbitrate generally all disputes."[58] "To maintain the presumption, an arbitration agreement does not need to delegate *all cases* to arbitration; it must only *generally* provide for arbitration of all disputes."[59]

Mr. Arnold claims that the integration of the AAA rules empowers the arbitrator to determine the issue of arbitrability.[60] The arbitration clause in the Employment Agreement states, in relevant part, "[t]he Parties agree that any dispute arising from or relating to this Agreement, or breach thereof, shall be submitted to the American Arbitration Association for binding arbitration… under the rules of the AAA Employment Arbitration Rules and Mediation Procedures[.]"[61] The second prong of the *Willie Gary* standard requiring that the arbitration clause "incorporates a set of arbitration rules that empower arbitrators to decide arbitrability' such as the

---

[58] *BuzzFeed Media Enterprises, Inc. v. Anderson*, 2024 WL 2187054, at *5 (Del. Ch. May 15, 2024) (internal citation omitted).

[59] *Id.* (citing *Willie Gary, LLC*, 906 A.2d at 80) (collecting cases and finding that "if a provision generally refers all but a subset of disputes to arbitration, that subset must overwhelm the whole to negate that broad delegation.").

[60] D.I. 31 at 13.

[61] JX 4 at §12.

AAA rules" is therefore fulfilled here, creating a heavy presumption that the parties have agreed to arbitrate arbitrability.[62]

The arbitration clause in the Employment Agreement does contain a carve out provision stating, "in the event of any Party's breach of any of the covenants set forth in Sections 3, 4, 5, or 8, a Party shall have the right to obtain injunctive relief from any federal or state court of competent jurisdiction … and will not be required to arbitrate any claim for breach of such Sections."[63] It is true that the incorporation of the AAA rules alone does not fulfill this standard when there is a carve out authorizing certain issues be pursued in the courts, requiring then, "something other than the incorporation of the AAA rules" to establish an intent to submit the question of substantive arbitrability to the arbitrator.[64] However, for these carveouts to overcome the presumption, the subsets "must be obviously broad and substantial[,]" or said differently "must overwhelm the whole to negate that broad delegation."[65]

---

[62] *Blackmon v. O3 Insight, Inc.*, 2021 WL 868559, at *3 (Del. Ch. Mar. 9, 2021) (quoting *Willie Gary, LLC*, 906 A.2d at 79); *see also BuzzFeed Media Enterprises, Inc.*, 2024 WL at *5 ("Satisfaction of the first prong creates a heavy presumption that the parties intended to delegate substantive arbitrability").

[63] JX 4 at §12.

[64] *Blackmon*, 2021 WL at *3 (quoting *Willie Gary, LLC*, 906 A.2d at 79).

[65] *BuzzFeed Media Enterprises, Inc.*, 2024 WL at *6.

The carveouts here do not fulfill such a standard; therefore, both prongs have been met.

The arbitration clause incorporates the rules of the AAA which provide for the delegation of issues of substantive arbitrability to the arbitrator and the clause also provides generally for the arbitration of all disputes arising under the Employment Agreement.[66] The arbitration clause is also without the type of carveout that would indicate the parties agreed to the Court's jurisdiction over substantive arbitrability such that it could overcome the weighted presumption in favor of delegation that arose through the incorporation of the AAA rules.[67] The Employment Agreement, read on its own, therefore, properly delegates issues of substantive arbitrability to be decided by the arbitrator.

> **B.      The Operating Agreement does not disrupt the Employment Agreement's delegation of arbitrability.**

The Parties argued extensively at oral argument and in their briefing on whether there is a problem of competing agreements between the parties, one of which, the Employment Agreement, containing an arbitration clause,[68] and the others, the Operating Agreement and Amended Operating Agreement, which

---

[66] JX 4 §12.

[67] *Id.*

[68] JX 4 at § 12.

provide for issues to be handled in the state or federal courts of Delaware.[69] The claims within Defendant's Demand rest on whether Plaintiffs' rescission of Defendant's equity was a wrongful breach of contract under the Employment Agreement, Letter Agreement, and Release.[70] The Plaintiffs seem to argue that a determination must be made as to whether the Defendant's claims arise out of the Employment Agreement and/or the Operating Agreement in order to answer the question of whether the parties have delegated the issue of substantive arbitrability to the arbitrator.[71] I disagree.

"[T]he existence of an arbitration agreement is a question for the Court[,]"[72] but once the existence has been established the Court should explicitly leave questions of substantive arbitrability to the arbitrator if it is also established that the parties have clearly and explicitly agreed to arbitrate arbitrability.[73] When "various

---

[69] JX 3 at §15.10. Under the Operating agreements disputes were to be submitted to the United States District Court for the State of Florida or any Florida State Court but the Amended Operating Agreement supersedes that provision. *Id.*; JX 1 at § 9.6.

[70] JX 8 at 20–22.

[71] D.I. 12 at 19–20; D.I. 32 at 2–9.

[72] *BuzzFeed Media Enterprises, Inc.*, 2024 WL at *13 (citing *Field Intel. v. Xylem Dewatering Solutions Inc.*, 49 F.4th 351, 356–58 (3d Cir. 2022); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116–17 (11th Cir. 2014)).

[73] *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[B]efore referring a dispute to an arbitrator, the court determined whether a valid arbitration agreement exists. But if a valid agreement exists and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *see also Fairstead Capital Management LLC v. Blodgett*, 288 A.3d 729, 753 (Del. Ch. Jan. 6, 2023)

contracts are implicated in a claim and those contracts diverge on the matter of arbitral dispute resolution, [the] requirement that a provision mandate the arbitration of all disputes is impossible to satisfy."[74] As the analysis above already describes, "[c]lear and unmistakable evidence" necessary to commit questions of substantive arbitrability to an arbitrator cannot exist when this prong is not satisfied.[75] "[W]hen the arbitration petition is brought according to the terms of an arbitration provision in one agreement, with a claim expressly invoking or relying on another arbitration-free agreement," the Court decides the arbitrability of the claims, but the Court does not assume issues "of substantive arbitrability where the claim is not expressly under an arbitration free agreement."[76]

The parties' arguments relating to this issue circled largely around three cases dealing with arbitral issues arising out of multiple agreements. The Plaintiffs cite to *Coinbase* and *Fairstead* in support of their argument that because two agreements with conflicting arbitration clauses have been implicated this Court must make the

---

("[A] court must address issues of contract formation before deferring to an arbitrator to resolve the who decides question under a delegation provision.").

[74] *Fairstead Capital Management LLC*, 288 A.3d at 758 (quoting *AffiniPay, LLC v. West*, 2021 WL 4262225 at *5 (Del. Ch. Sept. 17, 2021)).

[75] *See id.*

[76] *BuzzFeed Media Enterprises, Inc.* 2024 WL at *17 (citing *Fairstead Capital Management LLC* 288 A.3d at 744–45; *Kokorich v. Momentus Inc.*, 2023 WL 3454190, at *6 (Del. Ch. May 15, 2023)).

determination of the underlying arbitrability of the claim.[77] Defendant argues that there is a factual distinction from the case at hand to these cases presented by the Plaintiffs, which is that Mr. Arnold's claims have been brought under one agreement, the Employment Agreement.[78] At oral argument this issue was focused to the third case, *BuzzFeed*, with the Defendant arguing that *BuuzFeed* supports its position regarding which agreement has been expressly implicated in the underlying claims.

I found *BuzzFeed* to be both informative on the other two cases but decisive as to the outcome of this case, particularly when it states "*Fairstead* [does] not shift substantive arbitrability to the Court simply because the claims under the EAs are brought in the context of the OAs and the Parent Charter."[79] Vice Chancellor Zurn, aptly goes on to distinguish *Fairstead* from the facts of *BuzzFeed* stating that the "case[] involve[s] an arbitration petition asserting the arbitrator's jurisdiction under one agreement with an arbitration provision, while also *expressly* invoking other agreements lacking an arbitration provision."[80] Here, Mr. Arnold's claims in the Arbitration Demand expressly invoke the Employment Agreement and Letter

---

[77] D.I. 12 at 19; D.I. 32 at 1; *see e.g. Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024).

[78] D.I. 31 at 4.

[79] *BuzzFeed Media Enterprises, Inc.*, 2024 WL at *17.

[80] *Id.* (emphasis added).

Agreement, and although he makes reference to the Operating Agreement, his claims are for breach of the Employment Agreement and Letter Agreement.[81] Therefore, the delegation within the arbitration clause is not disrupted because of Mr. Arnold's explicit invocation of the Employment Agreement. Additionally, since the Plaintiffs' argument can be reduced to one that argues that Mr. Arnold's claims do not fall under the Employment Agreements arbitration clause, this is actually a substantive arbitrability question for the arbitrator.[82]

This Court's jurisdiction to make decisions relating to these conflicting agreements stops at the determination of the existence of the arbitration clause and any delegation therein. Any further question as to whether the claims brought by Mr. Arnold are within the scope of the arbitration clause in the Employment Agreement is a question of substantive arbitrability that has been properly delegated to the arbitrator. The Operating Agreement here does not supersede or disrupt in any way the existence of the arbitration clause within the Employment Agreement. Mr.

---

[81] JX 8 at 20–22.

[82] *See BuzzFeed Media Enterprises, Inc.*, 2024 WL at *12 ("despite BME's best efforts to package its argument as one for the Court, its argument that the Employees' claims 'do not fall under the [EA's] arbitration clauses' is actually a substantive arbitrability question for the arbitrator"); *see also* D.I. 12 at 5 (arguing the application of *Coinbase* on the basis that multiple agreements have been implicated by stating "[Mr.] Arnold suggests the arbitration provision in the Employment Agreement and Release require the AAA to determine the arbitrability of his Claims over his Equity Units. But the Equity Units were issued under, and are governed by, MarketWise's Restated and Amended Operating Agreements").

Arnold has brought his claims before the AAA under the Employment Agreement. The question brought forward by the Plaintiffs that requests this Court make a finding as to the source of the Defendant's rights in the at issue equity interests, or as to which agreement the Defendant's claims arise under, is a question of substantive arbitrability left to the arbitrator.

## III. CONCLUSION

For reasons detailed above, based on the sufficiently developed record, I find the parties have agreed within the Employment Agreement to arbitrate the issue of arbitrability and the Operating Agreement does not disrupt the existence of that delegation. There are no material facts in dispute, and Defendant is entitled to judgment as a matter of law. The Plaintiffs' motion for summary judgment and for permanent injunction must be denied and accordingly I find it appropriate that Defendant's motion for summary judgment and motion to compel arbitration be granted.

This is my final report, and exceptions may be filed under Court of Chancery

Rule 144.[83]

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery

---

[83] *See* Ct. Ch. R. 144(d)(1) (In "[a]ctions that are not summary or expedited… [a] party taking exceptions must file a notice of exceptions within 11 days of the date of the Final report or Draft Report.").