**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**LOREN MITCHELL**
**MAGISTRATE IN CHANCERY**

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 8, 2025

Sidney S. Liebesman, Esquire
Seth A. Niederman, Esquire
Fox Rothschild LLP
1201 N. Market St., Suite 1200
Wilmington, DE 19801

Kelly A. Green, Esquire
Jason Z. Miller, Esquire
Smith, Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

RE:  *Tabula Rasa Healthcare Group, Inc., v. Mphasis Limited, India*,
C.A. No. 2025-0020-LM

Dear Counsel:

The two motions pending before me, and addressed in turn within this letter, are the defendants' motion to dismiss and the plaintiff's motion for preliminary injunction to enjoin arbitration.[1] The underlying breach of contract action has been submitted to the American Arbitration Association ("AAA"). For the reasons that follow, I must grant defendant's motion to dismiss and deny the plaintiff's motion for preliminary injunction.

---

[1] Defendants' pending motion to maintain confidentiality designations will be addressed separately.

## I. FACTUAL BACKGROUND[2]

Tabula Rasa HealthCare Group, Inc. (hereinafter, "Plaintiff"), is a Delaware corporation with its principal place of business located in New Jersey.[3] Plaintiffs brought the present action against Mphasis Corporation (hereinafter, "Mphasis Corp"), a Delaware corporation, and Mphasis Limited, India (hereinafter, "Mphasis Ltd."), a foreign company, (collectively, "Defendants") requesting that the Court declare an arbitration clause as unenforceable and enjoin the parties from proceeding to arbitration.[4]

### A. The Agreements and Arbitration Clause

On August 30, 2021, the parties entered into the Master Services Agreement ("MSA").[5] The Master Services Agreement Contains the following arbitration clause:

> If the dispute has not been settled within thirty (30) days following the notice of the dispute, such dispute shall thereafter be finally settled under the Rules of Arbitration of the International Chamber of Commerce (if conducted outside the United States) or the American Arbitration Association (if conducted inside the United States) by one

---

[2] Citations to the Docket, and if needed, its exhibits are cited in the form of "D.I. __, Ex. #".

[3] D.I. 1 at ¶4; D.I. 24 at 1.

[4] D.I. 1 at ¶¶5–6; D.I. 24 at 1.

[5] D.I. 1, Ex. B at 1.

or more arbitrators appointed in accordance with the said Rules of Arbitration. The Parties hereby renounce all recourse to litigation and agree the award of the arbitrator shall be final and subject to no judicial review. The prevailing party shall be entitled to reimbursement of all costs related to such arbitration (including reasonable attorneys' fees) from the other Party.[6]

The MSA provides that "[a]ll substantive questions of law shall be determined under the laws of Delaware without regard to its principles of conflict of laws. Any arbitration will take place in that jurisdiction, or at such other place or in such other manner as is mutually agreed by the Parties."[7] The MSA also includes language directing severability of provisions within the contract (hereinafter, the "Severability Clause") stating that any invalid, illegal, or unenforceable provisions "shall be treated as modified to the least extent necessary to rectify its invalidity, illegality or unenforceability, and shall be enforced as so modified."[8]

After executing the MSA, the parties then executed a Master Statement of Work (hereinafter, "MSOW") followed by several Statements of Work, one of which (hereinafter, "SOW-2") outlines Mphasis' responsibilities in providing

---

[6] D.I. 1, Ex. B at § 15.2.

[7] *Id.* at § 15.3.

[8] *Id.* at § 17.2.

services supporting Tabula's electronic health record business.[9] The MSOW incorporates the terms of the MSA such "that the [MSOW] and the [MSA] shall be considered one, fully integrated document," and "sets forth the broad project overview, and other governing terms and conditions that will apply for each of the individual SOWs … made pursuant to this MSOW."[10]

### B. Mphasis' Alleges Breach of Contract and Issues Arbitration Demand

Plaintiff alleges that the Defendants failed to fulfill their obligations within the SOW-2.[11] Plaintiff emailed a letter to the Defendants on October 11, 2024, giving them written notice of their intention to terminate SOW-2.[12] Defendants position is that termination is improper under the MSA because, although the letter states it was terminated for cause, it failed to set forth specific grounds for termination.[13] On November 14, 2024, Defendants filed an arbitration demand with the American Arbitration Association (hereinafter, "AAA") alleging multiple breaches of contract claims against Tabula.[14]

---

[9] D.I. 1, Ex. C; D.I. 1, Ex. D.

[10] D.I. 1, Ex. C at 1.

[11] D.I. 1 at ¶¶26–28.

[12] D.I. 1, Ex. G; D.I. 1 at ¶ 29; D.I. 24 at 4.

[13] D.I. 24 at 5.

[14] D.I. 1 at ¶ 30; D.I. 24, Ex. 1 at 1.

## C. Procedural Posture

On January 7, 2025, the Plaintiff filed a complaint seeking declaratory judgment to render the Arbitration Agreement as unenforceable and filed a motion for preliminary injunction to enjoin arbitration from proceeding.[15] On January 30, 2025, the Defendants moved to dismiss for lack of subject matter jurisdiction under Court of Chancery Rule 12(b)(1).[16] The parties joint briefing on the Defendants' motion to dismiss and for the Plaintiff's motion for preliminary injunction completed on April 4, 2025.[17] An oral argument was held on July 8, 2025 and afterward I took these matters under advisement.[18]

## II. ANALYSIS

"Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate."[19] "When addressing disputes concerning contractual arbitration provisions, 'this court turns first to the Delaware

---

[15] D.I. 1.

[16] D.I. 19.

[17] D.I. 24; D.I. 30; D.I. 32.

[18] D.I. 40.

[19] *NAMA Hldgs, LLC v. Related World Market Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007).

Uniform Arbitration Act (the "DUAA").'"[20] The DUAA "incorporates the terms of the Federal Arbitration Act unless the agreement at issue explicitly references the Delaware Uniform Arbitration Act."[21] Here, the relevant agreements make no direct reference to the DUAA; therefore the Federal Arbitration Act (the "FAA") applies.[22]

"[C]ontractual arbitration clauses are generally interpreted broadly in furtherance of [Delaware public policy favoring arbitration,]" and a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) will be granted "if the parties contracted to arbitrate the claims asserted[.]"[23]  Under the FAA, the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"[24] Plaintiff opposes the motion to dismiss for lack of subject matter

---

[20] *Erving v. ABG Intermediate Hldgs. 2, LLC*, 2022 WL 17246320, at *3 (Del. Ch. Nov. 28, 2022) (quoting *Innovation Inst., LLC v. St. Joseph Health Source, Inc.*, 2019 WL 4060351, at *4 (Del. Ch. Aug. 28, 2019)).

[21] *Meyers v. Quiz-Dia LLC*, 2016 WL 7048783, at *2 (Del. Ch. Dec. 2, 2016) (citing 10 Del. C. §§5702 (a), (c)).

[22] *See* D.I.1, Ex. B; D.I. 1, Ex, C; D.I. 1, Ex. D.

[23] *Glazer v. Alliance Beverage Distrib. Co., LLC*, 2017 WL 822174, at *1 (Del. Ch. Mar. 2, 2017) (quoting *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *4 (Del. Ch. Mar. 28, 2013)).

[24] 9 U.S.C. § 3.

jurisdiction by arguing the entirety of the arbitration clause is not valid and therefore the delegation clause adopted therein is also unenforceable.[25] For the reasons that follow, I disagree and find that the Defendants are correct in their statement that the Court lacks subject matter jurisdiction over issues of substantive arbitrability, and in turn, the Plaintiff's motion for preliminary injunction should be denied as moot.

A.    **The severability clause allows for the arbitration clause and the delegation clause therein to be enforceable.**

"[T]he existence of an arbitration agreement is a question for the Court[,]"[26] but once the existence has been established the Court should explicitly leave questions of substantive arbitrability to the arbitrator if it is also established that the parties have clearly and explicitly agreed to arbitrate arbitrability.[27] "The prospective waiver doctrine in the arbitration context refers to a situation in which the parties agree that, if disputes arise between them, then they waive the right to rely on federal

---

[25] D.I. 30 at 4–10.

[26] *BuzzFeed Media Enters., Inc. v. Anderson*, 2024 WL 2187054, at *13 (Del. Ch. May 15, 2024) (citing *Field Intel. v. Xylem Dewatering Solutions Inc.*, 49 F.4th 351, 356–58 (3d Cir. 2022); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116–17 (11th Cir. 2014)).

[27] *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[B]efore referring a dispute to an arbitrator, the court determined whether a valid arbitration agreement exists. But if a valid agreement exists and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *see also Fairstead Capital Management LLC v. Blodgett*, 288 A.3d 729, 753 (Del. Ch. Jan. 6, 2023) ("[A] court must address issues of contract formation before deferring to an arbitrator to resolve the who decides question under a delegation provision.").

law. The Supreme Court has observed that such waivers violate public policy."[28] "Under the severability principle, courts treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract to which it appears."[29]

"A clear and unambiguous severability clause permits the Court to sever the invalid language while enforcing the remainder of the agreement that does not violate the law."[30] The severability of the terms of a contract "is purely a question of the intent of the parties."[31] In the interpretation of the parties intent in reference to the terms of a contract, "[a]bsent ambiguity[,]" priority is given "to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions."[32]

Here the Plaintiff challenges the validity of the agreement to arbitrate, thereby issuing to the Court the task of determining the validity of the agreement to arbitrate and the underlying delegation clause while not overstepping its bounds in any

---

[28] *Williams v. Medley Opp. Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) (citing *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013)).

[29] *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *12 (Del. Ch. Mar. 30, 2020).

[30] *Wagner v. BRP Group, Inc.*, 316 A.3d 826, 861 (Del. Ch. May 28, 2024).

[31] *Tracy v. Franklin*, 67 A.2d 56, 61 (Del. 1949).

[32] *Fairstead*, 288 A.3d at 759 (quoting *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016)).

substantive arbitrability determination.[33] The arbitration clause contains a sentence that operates to prospectively waive the parties' statutory rights, specifically prohibiting the ability to move to confirm or vacate an arbitration award upon the completion of arbitration, which has been deemed by the Supreme Court to be against public policy.[34] The dispute on this issue, and in particular the effect this unenforceable clause has on the delegation of the issue of substantive arbitrability to the arbitrator, hinges on whether the arbitration clause should be severed in full or in part. This turns the Court's attention to the parties' intention as evidenced in "the four corners of the document", and specifically the unambiguous language of the Severability Clause.[35] The Severability Clause states,

> In the event that any one or more provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable, any such invalid, illegal or unenforceable provision shall be treated as modified to the least extent necessary to rectify its invalidity, illegality or unenforceability, and shall be enforced as so modified.[36]

---

[33] *See BuzzFeed*, 2024 WL at *13 (stating that when the very existence of the arbitration agreement is in dispute the Court may "proceed[] to consider the continuing existence of the container agreement to determine the parties' continuing assent to arbitrate[,]" but once the Court determines that the agreement exists substantive arbitrability must be left to the arbitrator per the parties' agreement).

[34] D.I. 1, Ex. B at § 15.2 ("The parties hereby renounce all recourse to litigation and agree the award of the arbitrator shall be the final and subject to no judicial review."); *Williams*, 965 F.3d at 238 (citing *Italian Colors Rest.*, 570 U.S. at 236).

[35] *Fairstead*, 288 A.3d at 759 (quoting *Viking Pump, Inc.*, 148 A.3d at 648).

[36] D.I. 1, Ex. B at §17.2.

Although Plaintiff argues that the judicial review provision cannot be severed and the entire arbitration agreement should be deemed unenforceable, I disagree. Here, the MSA's severability clause clearly supports that the modification of invalid portions of the agreement should be done "to the least extent necessary to rectify its invalidity," and therefore supports severing a portion of the arbitration clause if found unlawful and allowing the rest of the Arbitration Clause to stand.[37]

The invalid portion of the Arbitration Clause may be severed, and therefore the arbitration clause and the language delegating the issue of substantive arbitrability therein are valid. I explain further below the Parties' delegation of the issue of substantive arbitrability to the arbitrator.

B. **According to the terms of the arbitration clause, this Court lacks the ability to rule on the issue of substantive arbitrability.**

"The threshold question regarding the validity of an arbitration agreement is known as substantive arbitrability."[38] "Substantive arbitrability is the question of whether a dispute is within the scope of an arbitration provision and, therefore,

---

[37] *Id.*; *see also Suppi Constr., Inc. v. EC Dev. I, LLC*, 2024 WL 939851, *5 (Del. Super. Mar. 4, 2024) ("A clear and unambiguous severability clause permits the Court to sever the invalid language while enforcing the remainer of the agreement that does not violate the law.").

[38] *DMS Properties-First, Inc. v. P.W. Scott Assocs., Inc.*, 748 A.2d 389, 391 (Del. 2000).

subject to arbitration."[39] "In order to determine whether claims should be resolved through arbitration, the court must first determine whether substantive arbitrability will ultimately be decided by the court or [by] an arbitrator."[40] "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability) courts generally … should apply ordinary state-law principles that govern the formation of contracts."[41]

Generally, questions of substantive arbitrability are decided by the courts.[42] "Delaware recognizes an exception to the general rule that 'courts should decide questions of substantive arbitrability' when the parties' contract provides 'clear and unmistakable evidence' of their intent that an arbitrator should decide the question."[43] "[T]he parties are considered to have explicitly and clearly provided for arbitrability to be an issue for the arbitrator where they have 'generally provide[d]' for arbitration of all disputes, and 'incorporate[d] a set of arbitration rules (such as

---

[39] *AffiniPay, LLC v. West*, 2021 WL 4262225, at *4 (Del. Ch. Sep. 17, 2021).

[40] *West IP Common's, Inc. v. Xactly Corp.*, 2014 WL 3032270, at *6 (Del. Super. Ct. June 25, 2014).

[41] *First Options of Chicago, Inc, v. Kaplan*, 514 U.S. 938, 944 (1995).

[42] *Redeemer Committee of Highland Crusader Fund v. Highland Cap. Mgmt.*, 2017 WL 713633, at *3 (Del. Ch. Feb. 23, 2017).

[43] *Innovation Inst., LLC*, 2019 WL at *4 (Del. Ch. Aug. 28, 2019) (quoting *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006)).

the AAA rules) that provide for the arbitrator to address the issue."[44] When the arbitration agreement incorporates a set of arbitration rules a heavy presumption is created that "the parties intended to delegate substantive arbitrability[,]" and then the remaining prong asks "whether that heavy presumption is overcome because the parties did not agree to arbitrate generally all disputes."[45]

The Arbitration Agreement does not contain an express delegation clause, but it does refer to the "Rules of Arbitration" of the AAA (hereinafter, "AAA Rules") which do contain a delegation clause.[46] The deferral to the AAA rules in the arbitration clause is sufficient to fulfill the prong of the *Willie Gary* standard that requires the clause incorporate a set of rules that delegates the issue of substantive arbitrability to the arbitrator.[47] The remaining prong is fulfilled here as the arbitration clause generally provides for the arbitration of "any dispute arising out of or in

---

[44] *Hagler v. Evolve Acquisition LLC*, 2021 WL 6123549, at *4 (Del. Ch. Dec. 28, 2021) (quoting *Willie Gary, LLC*, 906 A.2d at 80).

[45] *BuzzFeed*, 2024 WL at *5 (internal citation omitted).

[46] D.I. 1, Ex. B at § 15.2 ("such a dispute shall thereafter be finally settled under the Rules of Arbitration of the International Chamber of Commerce (if conducted outside of the United States) or the American Arbitration Association (if conducted inside the United States) by one or more arbitrators appointed in accordance with the said Rules of Arbitration.").

[47] *McLaughlin v. McCann*, 942 A.2d 616, 625 (Del. Ch. Feb. 21, 2008) ("[A] reference to the AAA Rules provide[s] evidence of the parties' clear and unmistakable intent to arbitrate arbitrability.").

connection with this Agreement," after the parties have made an attempt to resolve the issue themselves, "be finally settled under the Rules of … the American Arbitration Association."[48]

The parties do not dispute the applicability of the AAA Rule's delegation clause;[49] rather, the Plaintiff argues that the Arbitration Clause is not enforceable in its entirety rendering the referral to the delegation clause in the AAA rules inapplicable to defer the issue of arbitrability.[50] As discussed above, I do not find this argument to be compelling. The issue of substantive arbitrability is known as a threshold question for a reason, and the Plaintiff here cannot circumvent that entry point by attempting to force the Court to decide on arbitrability when it lacks the power to do so in the first place.[51] The Arbitration Clause and the delegation adopted through the AAA rules therein remains intact through the Severance Clause that removes the prohibited provision.

---

[48] D.I. 1, Ex. B at §§15.1–15.2.

[49] D.I. 24 at 12; D.I. 30 at 4 n. 3.

[50] D.I. 30 at 4–10.

[51] *See e.g. Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 356 (Del. Ch. Nov. 22, 2023) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

I do not find it necessary to overcomplicate this issue and draw Plaintiff's attention to the very core of this threshold question which is one of intent, specifically the "clear and unmistakable evidence that the parties agreed to submit the question to arbitration."[52]  Here, an existing arbitration clause expresses, in writing, the parties' clear intent to submit such issues of arbitrability to an arbitrator, and adopts a set of rules that agrees to arbitrate arbitrability,  so this Court's analysis must end there. Accordingly, I must agree with Defendants' assertion that this Court lacks subject matter jurisdiction over issues of substantive arbitrability.

### C.    The Plaintiff's motion for preliminary injunction is dismissed as moot.

"A preliminary injunction may be granted where the movant demonstrates: (1) a reasonable probability of success on the merits at a final hearing; (2) an imminent threat of irreparable injury; and (3) a balance of the equities that tips in favor of the issuance of the requested relief."[53] Proof of these three elements is by "the preponderance of the evidence,"[54] which requires evidence making something

---

[52] *Innovation Inst., LLC*, 2019 WL at *4 (quoting *Willie Gary, LLC*, 906 A.2d at 78).

[53] *Applied Energetics, Inc. v. Farley*, 2019 WL 334426, at *5 (Del. Ch. Jan. 23, 2019) (citing *Nutzz.com v. Vertrue Inc.*, 2005 WL 1653974, at *6 (Del. Ch. Jul. 6, 2005)).

[54] *Rosenbaum v. CytoDyn Inc.*, 2021 WL 4775140, at *13 (Del. Ch. Oct. 13, 2021).

more likely than not.[55] When the Court finds a lack of subject matter jurisdiction over issues of substantive arbitrability an opposing party's motion for preliminary injunction must be denied.[56]

As already explained above, the arbitration clause is valid and therein the parties have agreed that the issue of substantive arbitrability is in the hands of the arbitrator. The Plaintiff's inability to establish this Court's jurisdiction over the issue of substantive arbitrability implicates the failure of their motion for preliminary injunction on the first prong requiring a showing of likelihood of success on the merits. As this Court lacks subject matter jurisdiction to determine the threshold question of substantive arbitrability, I find it appropriate to deny Plaintiff's motion for preliminary injunction as moot.

## III. CONCLUSION

In summation, this Court lacks subject matter jurisdiction to decide on substantive arbitrability and the Plaintiff's motion for preliminary injunction enjoining arbitration is denied. Given that the issue of substantive arbitrability is

---

[55] *McKenna v. Singer*, 2017 WL 3500241, at *13 (Del. Ch. Jul 31, 2017).

[56] *See e.g. CVD Equip. Corp. v. Dev. Specialists, Inc.*, 2015 WL 4506052, at *4 (Del. Ch. Jul. 23, 2015) ("Since the Seller contractually agreed to be bound on questions of substantive arbitrability by the arbitrator, a complete contractual remedy exists in arbitration, and I am without jurisdiction. For the foregoing reasons, the Assignee's Motion to Dismiss is granted, and the Seller's request for injunctive relief is moot.").

being referred to an arbitrator, I find it appropriate to stay the matter under the FAA.[57] If the arbitrator ultimately determines the claim is arbitrable, the parties should update the Court and then this action will be dismissed for lack of subject matter jurisdiction.

There is also an outstanding issue regarding fees. Defendants argue they are entitled to reimbursement for fees and costs associated with this action pursuant to section 15.2 of the MSA that provides "[t]he prevailing party shall be entitled to reimbursement of all costs related to such arbitration (including reasonable attorneys' fees) from the other Party."[58] Since the matter is stayed pending the arbitrator's decision regarding the arbitrability of the claims, I decline at this time to make any determination regarding attorney's fees and costs.

---

[57] 9 U.S.C. § 3; *see Innovation Inst., LLC*, 2019 WL at *6 (staying a matter pending the arbitrator's decision on arbitrability); *see also Erving*, 2022 WL at *8 (Del. C. Nov. 28, 2022) (staying the matter pending the arbitrator's decision after finding the parties evidenced a clear and unmistakable intent to have the arbitrator decide issues of substantive arbitrability).

[58] D.I.1, Ex. B at §15.2.

This is my final report, and exceptions may be filed under Court of Chancery Rule 144.[59]

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery

---

[59] *See* Ct. Ch. R. 144(d)(1) (In "[a]ctions that are not summary or expedited… [a] party taking exceptions must file a notice of exceptions within 11 days of the date of the Final report or Draft Report.").